IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| SARAH TOMPKINS, § | |
| § | |
| VS. § | |
| § | CA NO. 6:10-cv-058-LED |
| ABLE PLANET, INC.; § | |
| AMAZON.COM, INC.; § | |
| AMERICAN RECREATION PRODUCTS, INC; § | |
| BRIEL AMERICA, INC.; § | |
| CENTURY LLC; § | |
| CENTURY MARTIAL ART SUPPLY, LLC; § | |
| MAG INSTRUMENT, INC.; § | |
| TARGET CORPORATION; § | |
| THINK OPERATIONS, LLC; § | |
| WAL-MART STORES, INC.; § | |
| WENGER NA, INC. § | |

**DEFENDANT WAL-MART STORES' MOTION TO DISMISS
PLAINTIFF TOMPKINS' SECOND AMENDED COMPLAINT**

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Wal-Mart Stores, Inc. ("Walmart"), hereby respectfully moves the Court to dismiss Plaintiff Sarah Tompkins' ("Tompkins") "Second Amended Complaint" against Walmart. There are three equally compelling reasons that require Walmart's dismissal from this litigation – and Ms. Tompkins' "Second Amended Complaint" fails in its attempt to overcome the fatal deficiencies.

First, the Court lacks subject-matter jurisdiction as Plaintiff Tompkins lacks standing against Walmart. Under Rule 12(b)(1), the Court must dismiss a case against a defendant where the Court lacks subject-matter jurisdiction. This is precisely the case here. Plaintiff Tompkins has failed to sufficiently allege, as required by law, that she has suffered "any" cognizable injury-in-fact as a result of Walmart's alleged false patent marking, and her "Second Amended Complaint" fails to cure this fact. Tompkins is nothing more than an unaffected individual being utilized as a pawn to seek *qui tam* damages under 35 U.S.C. § 292. To the extent Plaintiff Tompkins is seeking to step into the

shoes of the public on behalf of the United States, she has fatally failed to plead any "concrete and particularized" harm allegedly caused by Walmart to anyone. Indeed, her "Second Amended Complaint" does nothing more than add on more vague and ambiguous allegations. Accordingly, the Court lacks subject matter jurisdiction over Walmart.

Second, the sole statute Plaintiff Tompkins relies upon in her Complaint, 35 U.S.C. § 292, requires that a plaintiff show that the defendant, *inter alia*: (1) used the word "patent" "in advertising in connection with an unpatented article," and (2) acted with the intent to deceive the public. Under applicable Supreme Court precedent, Plaintiff Tompkins is required to provide sufficient factual allegations beyond mere speculation. See Bell Atl. Corp. v. Twombley, 550 U.S. 544, 555 (2007). Plaintiff Tompkins has failed to adequately plead, and cannot establish, that Walmart is responsible for any alleged advertising that bears the word "patent" and, equally fatal, has insufficiently pled only bald conclusory allegations of an "intent to deceive." Plaintiff has failed to plead sufficient facts to support an allegation that Walmart: (i) is culpable for the alleged advertisements; or (ii) acted with the requisite intent to deceive the public; and, as such, the Complaint against Walmart must be dismissed.

Third, a Complaint under 35 U.S.C. § 292 requires an allegation that the defendant's accused conduct was fraudulent, deceptive, and intentional, and must be pled with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. Just as Plaintiff Tompkins has failed to adequately plead: (i) any cognizable injury-in-fact as required under 35 U.S.C. § 292' (ii) advertising by Walmart; or (iii) an intent-to-deceive; the Complaint is deficient under the heightened pleading standard of Rule 9(b).

I. **BRIEF STATEMENT OF PERTINENT INDISPUTABLE FACTS.**

Plaintiff filed her Original Complaint against Walmart and four other defendants on February 23, 2010, asserting one Count against Walmart pertaining to Walmart's offer for sale of

noise canceling headphones manufactured and sold to Walmart by Able Planet, Inc. ("Able Planet").

One month later, on March 26, 2010, Plaintiff Tompkins filed her "First Amended Complaint" against most of the original defendants, four new Counts against Walmart, and added six additional defendants -- American Recreation Products, Inc. ("ARP"), Century LLC ("Century"), Mag Instrument, Inc. ("Mag Instrument"), Think Operations, LLC ("TOL"), Wenger NA, Inc.("Wenger") and Briel America, Inc. ("Briel"). The Counts against Walmart in the "First Amended Complaint" included virtually identical deficient allegations against four new products, that time pertaining to Mag Instrument flashlights, Wenger tents, Briel espresso makers, and TOL baby bottles.

On April 19, 2010, Walmart filed a "Motion to Dismiss" the "First Amended Complaint." In lieu of substantively responding to Walmart's Motion to Dismiss, plaintiff Tompkins elected to attempt to cure the plain deficiencies in its "First Amended Complaint" by moving for leave to file yet one more complaint, its "Second Amended Complaint," on April 28, 2010. In her "Second Amended Complaint," Ms. Tompkins substituted ARP for Wenger in Count Four, and deleted Briel and Wenger from the Complaint (Tompkins voluntarily dismissed both parties from the case).

Just as in the "First Amended Complaint," each of Plaintiff Tompkins' Counts and allegations against Walmart in the "Second Amended Complaint" contain nothing more than bald, cookie-cutter, contentions -- as were found in the Original and First Amended Complaints:

> Defendants purportedly engaged in: "false patent marking under 35 U.S.C. § 292 by advertising and/or marking its products, or products of others for sale, as being protected by U.S. patent [sic] when, in fact, no patent exists which protects the product or the portion of the product asserted to be patented, with the intent of deceiving the public." Complaint, ¶ 11.

> Walmart "advertise(s)" on its website that products are patented "when, they are [it is] not, with actual and/or constructive knowledge of that fact, for the purpose of deceiving the public . . ." Complaint, ¶¶ 15, 20, 32, 37, 40, 45, 49, 54, 57, and 62.

3

Plaintiff's "Second Amended Complaint" adds nothing more than additional vague, non-specific, generalized, insufficient allegations:

> "Amazon.com and Walmart advertise thousands of items sold through their websites . . . as being patented." Complaint, ¶ 2.
>
> "Wal-Mart [does] not make any independent attempt to determine whether products advertised on [its] websites as patented are, in fact, patented." Complaint, ¶ 13.
>
> Upon information and belief, Wal-Mart and other defendants "created and posted the advertisements" on its website. Complaint, ¶ 16, 33, 41, 49, 58.
>
> Upon information and belief, Wal-Mart "advertised" the products as patented with (1) actual knowledge that the advertised products are not patented, or (ii) under a policy of refusing to confirm the patent status of products advertised as patented and with the knowledge of a high likelihood that at least a significant number of the hundreds or thousands of products advertised by them as being patented are not patented. Complaint, ¶¶ 19, 36, 44, 53, 61.
>
> Upon information and belief, Defendant Walmart and the suppliers of the accused products "advertised" the accused product as being patented to increase sales of the accused products, without limitation, causing the consumers to believe, (i) that the products had been determined by the United States Patent and Trademark Office to be new and useful, and (ii) that the government of the United States granted the manufacturers the exclusive right to make the products with the utility of the advertised product. Complaint, ¶¶ 17, 34, 42, 51, 59.
>
> Defendants harmed the U.S. and its taxpayers by "undermining the integrity of the patent system...," and "depriving the U.S. of revenue that would otherwise be granted . . ." Complaint, ¶ 68.
>
> Consumers have been generally harmed by Walmart as consumers wrongfully concluded that the accused products "embody new and useful improvements . . ." and that the U.S. has granted the products "a patent monopoly so that no other products may legally include the technology embodied in the advertised products". Complaint, ¶ 69.
>
> And, remarkably, Plaintiff has been harmed by Walmart because: (1) she is "an employee of a law firm specializing in intellectual property law" – and seeks to protect inventors' rights; (2) her family income is dependent upon "an attorney" who practices intellectual property law; and (3) she is somehow harmed by the alleged conduct. Complaint, ¶ 70.

4

Plaintiff Tompkins Original Complaint, First Amended Complaint, and Second Amended Complaint all contain <u>no</u> other details, alleged facts, or other allegations whatsoever, concerning Walmart's alleged conduct and purported intent.

Walmart is a one of the worlds largest retailers that regularly engages in the offer for sale and sale of branded products manufactured and provided to it by third-party suppliers. Walmart, like virtually all retail stores, materially relies upon its vendors' to mark, describe, and package the respective vendors' products – including, of course, any statements relating to any patents or pending patent applications. Indeed, Walmart purchases goods from over 65,000 suppliers and its stores employ over 100,000 independent SKU's ("stockkeeping units"). As for the five products that Plaintiff Tompkins accuses "Walmart" of falsely marking – Walmart did not and does not design, manufacture, mark, or package any of the products. Walmart also did not and does not design, layout, draft, or otherwise create, any of the packaging, inserts, product descriptions, markings, or product instructions for any of the accused products. Walmart receives from, and properly relies upon, the suppliers of the accused products to provide all such information and materials. Finally, the manufacturers and vendor's for the accused products, not Walmart, are solely responsible for preparing and making any statements or other representations regarding the patents, patent applications, or other claimed proprietary rights in such products.

**I.      ARGUMENT.**

    **A.      Plaintiff Tompkins Lacks Standing to Bring this Action Against Walmart.**

"[A]ll plaintiffs - including *qui tam* plaintiffs granted a statutory right of action - must satisfy the 'irreducible constitutional minimum' of standing." <u>Stauffer v. Brooks Brothers, Inc.</u>, 615 F.Supp. 2d 248, 253 (SD NY 2009) (<u>citing</u> <u>Vermont Agency of Natural Res. v. United States ex rel. Stevens</u>, 529 U.S. 765, 771 (2000), <u>quoting</u> <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992)). This requirement arises from Article III of the Constitution and imposes upon Plaintiff Tompkins the

"burden to establish: (1) that [she] has suffered an injury, (2) that is causally connected to the defendant, and (3) that is likely to be redressed by the court." Lujan, 504 U.S. at 560-1.  Plaintiff Tompkins has wholly failed to meet this burden and lacks standing.

The first required element, an injury-in-fact, is the "hard floor of Article III jurisdiction that cannot be removed by statute." Summers v. Earth Island Inst., 129 S. Ct. 1142, 1151 (U.S. 2009). While a *qui tam* plaintiff may proceed in vindication of the rights of the United States, the government or the public itself must have suffered an injury-in-fact causally connected to the defendant. See Vermont Agency, 529 U.S. at 774.  In most *qui tam* actions, such as cases under the False Claims Act, 31 U.S.C. § 3729, the injury-in-fact to the government is straightforward. However, in Section 292 cases, as Plaintiff Tompkins asserts here, an injury to the United States or public "is far less evident." Brooks Brothers, 615 F. Supp.2d at 254.  Section 292 seeks to protect "false marking that is fraudulent, deceptive, and intentional," not simply mistakes or inadvertence. Id. (citing Clontech Labs, Inc. v. Invitrogen Corp., 406 F.3d 1347, 1352 (Fed. Cir. 2005) (Section 292 is not a strict liability offense but requires an intent to deceive the public), and Blank v. Pollack, 916 F. Supp. 165, 173 (ND NY 1996) (no liability for "erroneous patent marking [that] was the result of mistake or inadvertence")).  Further, and importantly, the "injury-in-fact" must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560; Brooks Brothers, 615 F. Supp.2d at 255.

Plaintiff Tompkins has failed to allege any adequate injury-in-fact sufficient to invoke this Court's jurisdiction.  To the contrary, Tomkins has pled only statutorily deficient boilerplate allegations.  Indeed, the best Plaintiff Tompkins could muster in her many Complaints are the following "conclusory" allegations:

- Defendants purportedly engaged in: "false patent marking under 35 U.S.C. § 292 by advertising and/or marking its products, or products of others for sale, as being protected by U.S. patent [sic] when, in fact, no patent exists

- which protects the product or the portion of the product asserted to be patented, with the intent of deceiving the public." Complaint, ¶ 11;

- Walmart "advertise(s)" on its website that products are patented "when, they are [it is] not, with actual and/or constructive knowledge of that fact, for the purpose of deceiving the public . . ." Complaint, ¶¶ 15, 20, 32, 37, 40, 45, 49, 54, 57, and 62;

- Upon information and belief, Defendant Walmart and the suppliers of the accused products allegedly "advertised" the accused product as being patented to increase sales and allegedly caused consumers to believe that: (i) the United States Patent and Trademark Office deemed the products to be new and useful; and (ii) the government granted the manufacturers the exclusive right to make the products. Complaint, ¶¶ 17, 34, 42, 51, 59;

- Upon information and belief, Wal-Mart "advertised" the products as patented with: (1) actual knowledge that the advertised products are not patented; or (2) chose not to check whether patents covered the accused products purportedly knowing that a significant number of the hundreds or thousands of products offered by Walmart that bear patent markings may not be patented. Complaint, ¶¶ 19, 36, 44, 53, 61;

- The U.S. and its taxpayers have somehow been generally harmed by Walmart "undermining the integrity of the patent system...," and "depriving the U.S. of revenue that would otherwise be granted . . ." Complaint, ¶ 68; and

- Consumers have been somehow been generally harmed by Walmart as consumers wrongfully concluded that the accused products "embody new and useful improvements . . ." and that the U.S. has granted the products "a patent monopoly so that no other products may legally include the technology embodied in the advertised products". Complaint, ¶ 69.

As the Brooks Brothers court properly held under applicable precedent, these types of broad-sweeping, bald, conclusory, allegations "are insufficient to establish anything more than the sort of 'conjectural or hypothetical' harm that the Supreme Court instructs is insufficient." Brooks Brothers, 615 F. Supp.2d at 255. Interestingly, Plaintiff Tompkins Second Amended Complaint comes close to mirroring the same allegations made by the

7

plaintiff in Brooks Brothers – and, of course, those allegations were held inadequate.[1/]

Brooks Brothers, 615 F. Supp.2d at 252.

In an apparent desperate effort to allege some palpable harm to herself, plaintiff Tompkins adds relatively bizarre allegations that: (1) she is employed by a law firm that practices intellectual property law; (2) her family income is dependent upon "an attorney" who practices intellectual property law; and, therefore (3) she is somehow inexplicably harmed by the alleged conduct. Complaint, ¶ 70. Not only is connecting the dots to reveal the contrived harm extremely difficult – if not impossible -- the attempt to conjure up such harm is precisely the type of conjectural and hypothetical harm that is prohibited. Lujan, 504 U.S. at 560; Brooks Brothers, 615 F. Supp.2d at 255.

Because Plaintiff Tompkins has failed to sufficiently plead any injury-in-fact, she indisputably lacks standing against Walmart and the Complaint against Walmart must be dismissed.

**B.   Plaintiff Tompkins Has Failed to Plead a Colorable Claim Under 35 U.S.C. § 292.**

Plaintiff Tompkins' Complaint also fails to plead a colorable claim under the Supreme Court's recent Twombley decision and 35 U.S.C. § 292. As such, the Court should dismiss the Complaint against Walmart under Rules 12(b)(1) and 12(b)(6).

When a motion to dismiss is filed under Rule 12(b)(1), "the allegations in the complaint are not controlling . . . and only uncontroverted factual allegations are accepted as true." Cedars-Sinai Medical Ctr. v. Watkins, 11 F.3d 1573, 1583 (Fed. Cir. 1993). The Court's "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences

---

[1/]   The plaintiff in Brooks Brothers asserted that the defendant: (1) knew, or at least should have known that the patents had expired; (2) knowingly misrepresented to the public that each of its so-marked products was covered by a valid U.S. Patent; (3) falsely marked the products "for the purpose of, and with the intent of, deceiving the public"; (4) "wrongfully quelled competition with respect to such . . . products"; (5) "wrongfully and illegally advertis[ed] patent monopolies that [defendants] do not possess" thereby causing harm to the economy of the United States because the product "has the potential to, discourage or deter" potential competitors "from commercializing a competing" product; and (6) "have likely benefitted in at least maintaining their considerable market share with respect to the" products. Brooks Brothers, 615 F. Supp.2d at 52.

8

favorable to the party asserting it." Shipping Financial Services Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). "If any of the grounds for subject matter jurisdiction are lacking, dismissal is mandatory." Inventorprise, Inc. v. Target Corp., 2009 U.S. Dist. LEXIS 102852., *6 (ND NY Nov. 2, 2009) (citing United Food & Commercial Workers Union Local 919 v. Centermark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994)).

Under the Supreme Court's recent pronouncement in Bell Atl. Corp. v. Twombley, the "factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Indeed, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than mere labels and conclusions, and a formulaic recitation of the elements of a cause." Id. Here, plaintiff Tompkins has pled nothing more than speculative, formulaic, allegations.

Similarly, under 35 U.S.C. § 292, a plaintiff must show, *inter alia*, that the defendant: (1) used the word "patent" (or any word or number importing that the product is patented) "in advertising in connection with any unpatented article;" and (2) acted with the intent to deceive the public. Here, Tompkins has failed to adequately plead either of these elements against Walmart.

### 1. Tompkins Failed to Sufficiently Plead Both an Allegation of Advertising and the Requisite Intent to Deceive.

Plaintiff Tompkins has failed to adequately plead, and importantly cannot establish, that Walmart is responsible for any alleged advertising that bears the word "patent" and, further, has insufficiently pled only bald conclusory allegations of an "intent to deceive."

#### (a) The "Advertising" Element.

The "advertising" element of 35 U.S.C. § 292 requires that there be a nexus between the defendant's marking, affixing, or using of a patent and the advertising of the product. Target Corp., 2009 U.S. dist. LEXIS 102852, at *13-14. First, there can be no dispute *that Walmart's suppliers*, not Walmart, designed, created, made, and printed any packaging, literature, and all material portions of

9

any written materials, for the accused products. Moreover, plaintiff Tompkins repeatedly acknowledges in her Complaint *that Walmart's suppliers*, at least in part, created all but one of the alleged advertisements for the accused products.[2] See Complaint, ¶ 16 (Able Planet "was involved in the creation of the aforementioned advertisements") (, ¶ 33 (Mag Instrument "was involved in the creation of the aforementioned advertisements"), ¶ 41 (ARP "was involved in the creation of the aforementioned advertisements"), and ¶ 58 (TOL "was involved in the creation of the aforementioned advertisements"). Indeed, ARP conceded in its Answer to the First Amended Complaint that it authored the language "patented hoop fly frame." These facts alone are fatal to the Plaintiff's Complaint. As such, there is absolutely no nexus between Walmart and the accused conduct.

The recent Target case is directly on point. In Target, the plaintiff's complaint alleged that Target violated 35 U.S.C. § 292 by offering products for sale in packaging bearing a patent number that did not cover the accused products. Target Corp., 2009 U.S. Dist. LEXIS 102852., at *16. The plaintiff asserted that Target's offer for sale of the products, and placement of the products on its store shelves, satisfied that "advertisement" element. Id. at *16-17. The U.S. District Court for the Northern District of New York disagreed, holding that such conduct did "not constitute 'advertising' within the meaning of 35 U.S.C. § 292" and that the requisite nexus was lacking. Id. at *17. The court also held that there was "no merit to Plaintiff's contention that the mere act of offering a mis-marked product for sale in a retail store brings the matter within the purview of the 'in advertising' provision of § 292(a)."[3] Id.

---

[2] Plaintiff did not plead that Briel was involved in the creation of said advertisements as, apparently, Briel was dismissed from the case

[3] The court also rejected plaintiff's argument that a sophisticated corporation has reason to know that the false marking occurred.

10

Importantly, plaintiff Tompkins tries to salvage her case against Walmart by now belatedly asserting that Walmart, as a large corporation with over one hundred thousand products, has some fictional duty to prospectively determine whether suppliers patent markings are accurate. As the Court should do here, the Northern District of New York in Target rejected a virtually identical argument. Id. at *20-21.

Just as in Target, the Court must dismiss the Complaint against Walmart. Walmart: (1) did not mark or package the accused products; (2) merely offered products for sale at retail that are allegedly mismarked by others; and (3) properly relied upon the accuracy of the packaging and information provided by its vendors. As Plaintiff Tompkins has failed to plead sufficient facts to satisfy the requisite "advertising" element, the Complaint should be dismissed under Rules 12(b)(1) and 12(b)(6).

**(b) Tompkins Fails to Satisfy the Requisite Intent-to-Deceive.**

Plaintiff Tompkins' Complaint fatally fails to allege sufficient facts to satisfy the requisite "intent-to-deceive' element.

"[F]actual allegations must be enough to raise a right to relief above the speculative level." Twombley, 550 U.S. 544, 555 (2007). "Because Section 292 is, unlike the Lanham Act, a penal statute, it must be strictly construed, and, as such, an intent to deceive will not be inferred from statements that may have been the result of inadvertence or mistake." Target, 2009 U.S. Dist. LEXIS 102852., at *18 (quoting Chamilia, LLC v Pandora Jewelry, LLC, 2007 U.S. Dist. LEXIS 71246, *29 (SD NY Sept 24, 2007)). "Indeed, the Fifth Circuit has 'adopted the formulation that an honest, though mistaken, mismarking of an article would not trigger liability under the statute.'" Id. at *19 (emphasis added) (quoting Clontech Labs., Inc. v. Invitrogen Corp., 406 F.3d 1347, 1352 (Fed. Cir. 2005) (citing Brose v. Sears, Roebuck and Co., 455 F.2d 763, 768-69) (5th Cir. 1972)).

11

Here, Tompkins provides nothing more than mere speculation. Tompkins speculates that Walmart had an "intent of deceiving the public" (Complaint, ¶ 11) and somehow had "actual and/or constructive knowledge of [the fact that the products were allegedly mismarked], for the purpose of deceiving the public . . ." Complaint, ¶¶ 15, 20, 32, 37, 40, 45, 49, 54, 57, and 62. "These allegations alone do not supply enough factual matter to suggest an intent to deceive, and amount to nothing more that the 'mere labels and conclusions' prohibited by Twombley." Brinkmeier v. Graco Children's Products, Inc., 2010 WL 545896, *4 (D. Del. Feb. 16, 2010). Nor can Tompkins desperate assertion prevail that Walmart's failure to perform independent due diligence on each and every product claim made on every one of the over 100,000 products that it sells somehow constitutes the requisite intent.

In Brinkmeier, remarkably similar to the barren allegations here, the plaintiff asserted that the defendant:

- "cannot have any reasonable belief that such products are protected by such patents";
- "knows, or should know" that products have been falsely marked;
- "[u]pon information and belief, [Defendant] marked product identified . . . with expired patents for the purpose of deceiving the public into believing that something contained in or embodied in the products is covered by or protected by the expired patent[s]."

Brinkmeier, 2010 WL 545896 at *4. And, just as should occur here, the Brinkmeier court held that the allegations were insufficient to meet the "intent-to-deceive" requirement of 354 U.S.C. § 292. Id.

Accordingly, Tompkins' Complaint against Walmart must be dismissed. See, e.g., Brinkmeier, 2010 WL 545896, at *5; Target, 2009 U.S. Dist. LEXIS 102852., at *23 ("Plaintiff has failed to set forth sufficient facts to establish a plausible claim that, by selling the Product with a false patent number on the back of its package, Target acted with the intent to deceive the public").

**C.      Plaintiff Tompkins has Failed to Plead Fraud with Particularity.**

The false marking statute, 35 U.S.C. § 292, "is a fraud-based claim, which is subject to the pleading requirements of Federal Rule of Civil Procedure 9(b)." <u>Target</u>, 2009 U.S. Dist. LEXIS 102852., at *23, fn.16.  These claims must be pled with particularity because 35 U.S.C. § 292 requires that a plaintiff establish that the alleged false marking "is fraudulent, deceptive, and intentional." <u>See Brooks Brothers</u>, 615 F. Supp.2d at 254; 35 U.S.C. § 292(a) ("for the purpose of deceiving the public").

Plaintiff Tompkins' Complaint contains nothing more than conclusory allegations that Walmart acted "for the purpose of deceiving the public in violation of 35 U.S.C. § 292" and is wholly insufficient to properly plead a claim for false patent marking and, as a result, must be dismissed.

## II.    **CONCLUSION**.

As Plaintiff Tompkins lacks standing to bring the actions set forth in the Complaint against Walmart, and has failed to comply with the requisite pleading requirements as set forth herein, Walmart respectfully requests that the Court grant its Motion to Dismiss the Complaint against Walmart and grant Walmart such other and further relief as the Court deems just and proper under the circumstances.

    Respectfully submitted,

    _/s/ Michael C. Smith_
    Michael C. Smith
    State Bar No. 18650410
    Siebman, Burg, Phillips & Smith, LLP
    713 South Washington Avenue
    Marshall, TX 75670
    Telephone: (903) 938-8900
    Facsimile: (972) 767-4620
    Email: michaelsmith@siebman.com

> David A. Roodman
> BRYAN CAVE LLP
> One Metropolitan Square
> 211 North Broadway, Suite 3600
> St. Louis, MO 63102
> Telephone: (314) 259-2000
> Facsimile: (314) 259-2020
>
> Attorneys for Defendant Wal-Mart Stores, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record, who are deemed to have consented to electronic service, are being served this 14th day of May 2010 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

_____
Michael Smith