# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| SARAH TOMPKINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 6:10-cv-00058 |
| VS. | § | |
| | § | |
| ABLE PLANET INCORPORATED; | § | |
| AMAZON.COM, INC.; | § | |
| AMERICAN RECREATION PRODUCTS, INC.; | § | |
| CENTURY LLC; | § | |
| CENTURY MARTIAL ART SUPPLY, LLC; | § | Jury Trial Demanded |
| MAG INSTRUMENT, INC.; | § | |
| TARGET CORPORATION; | § | |
| THINK OPERATIONS, LLC; | § | |
| WAL-MART STORES, INC.; | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT MAG INSTRUMENT, INC.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1) AND BRIEF IN SUPPORT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Sarah Tompkins ("Tompkins"), by and through her undersigned attorney, responds to Defendant Mag Instrument, Inc.'s ("Mag") Motion to Dismiss Pursuant to Rule 12(b)(1) (Docket No. 54), as follows:

**I.    Statement of the issues to be decided by the court (Local Rule 7(a)(1)).**

The sole issue presented in Mag's motion is whether Plaintiff has sufficient standing to bring this action, fulfilling the "case or controversy" requirement of Article III of the United States Constitution.

1

**II.     Background**

The background of this case is discussed in detail in Plaintiff's Response in Opposition to Defendant Mag's Motion to Sever (Docket No. 71).

**III.    Argument[1]**

**A.      *Qui Tam* plaintiffs have standing based on injuries to the United States.**

The Supreme Court has held that *qui tam* relators have constitutional standing because the relator is a partial assignee of the Government's claim. *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000). The Court recognized that a *qui tam* relator suffers no personal injury sufficient to confer standing. *Id.* at 772-73. Rather, "adequate basis for the relator's suit for his bounty is to be found in the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Id.* at 773. The Court then held that "the United States' injury in fact suffices to confer standing on [the *qui tam* plaintiff]" *Id.* at 774. Thus, a *qui tam* plaintiff's standing is based on an injury in fact to the United States.

**B.      The United States has suffered an injury to its sovereign interest in having its laws obeyed.**

With respect to the specific *qui tam* statute at issue in *Vermont Agency* ("the False Claims Act"), the court held that "[i]t is beyond doubt that the complaint asserts an injury to the United States-both the injury to its sovereignty arising from violation of its laws (which suffices to support a criminal lawsuit by the Government) and the proprietary injury resulting from the

---

[1] These issues have been briefed by a number of parties in actions filed under 35 U.S.C. § 292. In this brief, Plaintiff has attempted to concisely set out the most persuasive arguments and authorities on the issue. However, to the extent the Court is interested in additional argument regarding this important issue, Plaintiff would respectfully refer the Court to the United State's appeal brief filed in the appeal of *Stauffer v. Brooks Bros.*, 2009-1428, now pending before the Federal Circuit Court of Appeals. That brief contains a thorough and well-written discussion of the history of *qui tam* actions and the appropriateness of relator standing in claims brought pursuant to 35 U.S.C. § 292. An excerpt to that brief is attached as Exhibit 7 to Plaintiff's Response to Mag's Motion to Stay (Docket No. 73).

alleged fraud." *Id.* at 771.  Likewise, when a party violates 35 U.S.C. § 292, the United States suffers both a proprietary injury and an injury to is sovereign interest in having its laws obeyed.

In their dismissal motions, Amazon.com, Mag, and Wal-Mart all rely on the recent *Stauffer* opinion from the U.S. District Court of the Southern District of New York to support their arguments that Plaintiff lacks standing. *Stauffer v. Brooks Bros. et al.*, 615 F.Supp. 2d 248 (S.D.N.Y. 2009). The *Stauffer* court held that plaintiff Stauffer did not have standing to maintain his cause of action since he "failed to allege that defendants' conduct has caused an actual or imminent injury in fact to competition, to the United States economy, or the public that could be assigned to him as a *qui tam* plaintiff or be vindicated through this litigation." *Id.* at 255.

The injuries required by the *Stauffer* court are unnecessarily restrictive.  The better view of the law regarding *qui tam* standing is that given in *Pequignot v. Solo Cup Co.,* 640 F.Supp.2d 714 (E.D. Va. 2009).  *Pequignot* also involved a claim under Section 292*. Id.* at 715.  In determining the standing issue, the *Pequignot* court reviewed the history of *qui tam* actions and the Supreme Court's decision in *Vermont Agency* (*supra*).  *Id.* at 719-24.  The court held that plaintiff Pequignot, as a partial assignee of the government's claims, had standing to sue to for violations of Section 292. *Id.* at 724.  Specifically, the *Pequignot* court held that Section 292 plaintiffs have standing to assert a claim based on injuries to the sovereignty of the United States arising from a violation of its laws.  *Id*. at 724, fn. 15 (noting that the Supreme Court in *Vermont Agency* did not distinguish between the assignment of proprietary and sovereign interests).

Although the district court in *Stauffer* recognized that the court in *Pequignot* had found that injury to the United States' sovereign interests was sufficient to satisfy Article III's standing requirement, the *Stauffer* court declined to follow that decision for two reasons.  *Stauffer,* 615 F.Supp.2d at 254, fn.5.  First, the *Stauffer* court noted that Section 292 is not violated unless the

defendant falsely marked a product as patented "for the purpose of deceiving the public," and that "allegations such as plaintiff's that a defendant improperly marked an unpatented article as patented, standing alone, neither alleges a violation of section 292 nor pleads an injury in fact to the sovereign interest of the United States assignable to a *qui tam* plaintiff." *Id.* Second, the *Stauffer* court doubted "that the Government's interest in seeing its laws enforced could alone be an assignable, concrete injury in fact sufficient to establish a *qui tam* plaintiff's standing." *Id.* In support of its doubt the court cited *FEC v. Akins,* 524 U.S. 11, 24, (1998). However, *Adkins* is inapposite because it did not deal with a *qui tam* statute assigning the government's cause of action to an individual plaintiff. *Akins*, 524 U.S. at 24. Rather, the portion of *Adkins* cited by the *Stauffer* court merely stands for the proposition that a private citizen, who is <u>not</u> the beneficiary of a statutory assignment of the government's rights, does not have standing by virtue of the citizen's interest in seeing that laws are followed. *Id.* at 23-24.

The decision by the *Pequignot* court is supported by the long history of *qui tam* statutes in the United States. The First Congress passed several *qui tam* statutes that appear to exclusively redress injuries to sovereign interests:

> Act of Mar. 1, 1790, ch. 2, § 3, 1 Stat. 102 (allowing informer to sue for, and receive half of fine for, failure to file census return);
>
> Act of July 20, 1790, ch. 29, §§ 1, 4, 1 Stat. 131, 133 (allowing private individual to sue for, and receive half of fine for, carriage of seamen without contract or illegal harboring of runaway seamen);
>
> Act of July 22, 1790, ch. 33, § 3, 1 Stat. 137-138 (allowing private individual to sue for, and receive half of goods forfeited for, unlicensed trading with Indian tribes);
>
> Act of Apr. 30, 1790, ch. 9, §§ 16, 17, 1 Stat. 116 (allowing informer to conduct prosecution, and receive half of fine, for criminal larceny or receipt of stolen goods);
>
> Act of July 31, 1789, ch. 5, § 29, 1 Stat. 44-45 (giving informer full penalty paid by customs official for failing to post fee schedule);

> Act of Sept. 2, 1789, ch. 12, § 8, 1 Stat. 67 (providing informer half of penalty upon conviction for violation of conflict-of-interest and bribery provisions in Act establishing Treasury Department);
>
> Act of Feb. 25, 1791, ch. 10, §§ 8, 9, 1 Stat. 195-196 (providing informer half or fifth of fines resulting from improper trading or lending by agents of Bank of United States);
>
> Act of Aug. 4, 1790, ch. 35, § 4, 1 Stat. 153 (apportioning half of penalty for failing to deposit ship manifest to official who should have received manifest, and half to collector in port of destination).
>
> *See Vermont Agency*, 529 U.S. at 777, fns. 6 and 7.

The statutes cited above were a part of the history that the Supreme Court found "well nigh conclusive with respect to the question before us here: whether *qui tam* actions were 'cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process.'" *Id.* at 777. Accordingly, the *Vermont Agency* fully supports the decision in *Pequignot*.

The *Pequignot* decision finds further support in cases under the *qui tam* provision of the False Claim Act, 31 U.S.C. § 3730(b)(1) ("Section 3730"), which have allowed relators to proceed based solely on injuries to sovereignty. Those cases have held that a defendant violates Section 3730 by presenting a fraudulent claim to the Government regardless of whether the Government suffers a financial loss. S*ee e.g., U.S. ex rel. A+ Homecare, Inc. v. Medshares Management Group, Inc.,* 400 F.3d 428, 446 (6th Cir. 2005) ("[R]ecovery under the FCA is not dependent upon the government's sustaining monetary damages", *quoting Varljen v. Cleveland Gear Co., Inc.,* 250 F.3d 426 (6th Cir. 2001)); *Bly-Magee v. California,* 236 F.3d 1014, 1017 (9th Cir. 2001) ("[A] *qui tam* plaintiff need not prove that the federal government will suffer monetary harm to state a claim under the FCA."); *Harrison v. Westinghouse Savannah River Co.* 176 F.3d 776, 785 n.7 (4th Cir. 1999) ("[T]here is no requirement that the government have suffered damages as a result of the fraud."); *United States v. Rivera,* 55 F.3d 703, 709 (1st Cir.

1995) ("[T]he statute attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the claim for payment.") (internal quotes omitted).

Viewing Section 292 against this background of historic and modern decisions, it is clear that a Section 292 plaintiff has standing to bring an action seeking redress for either sovereign or proprietary injuries to the United States.

### C.    Plaintiff has pleaded an injury in fact to the United States

Defendants Amazon.com, Mag, and Wal-Mart argue that Plaintiff "has failed to allege any adequate injury-in-fact sufficient to invoke this Court's jurisdiction," *see* Wal-Mart Motion to Dismiss (Docket No. 48), p. 6; that Plaintiff makes "conjectural and hypothetical 'conclusory statements' about harm to the U.S. and the public," *see* Amazon Motion to Dismiss (Docket No. 53), p.6; and that "Tompkins has failed to allege any 'concrete and particularized' and 'actual' or 'imminent' injury to himself, the United States, or the public as a result of the alleged false marking" *see* Mag Motion to dismiss under Rule 12(b)(1) (Docket No. 54), p. 10.  Each of these arguments is without merit.

Any pleading that sufficiently states a cause of action under Section 292 necessarily satisfies the requirement of injury in fact to the United States because the violation of Section 292 is itself an injury to the United States.  Plaintiff goes beyond that minimum and has pleaded the following with respect to harm:[2]

> 64. A United States Patent is a legal monopoly granted by the government of the United States ("U.S.") pursuant to the Constitution of the United States and statutes enacted by the United State Congress.  The legal monopoly is granted to inventors of "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. §101.

---

[2] Plaintiff also pled an allegation of harm specific to herself, but Plaintiff does not rely on that allegation to establish standing.

65. The patent statutes passed by Congress, as interpreted by the Courts and implemented by the Department of Commerce, require an inventor to overcome significant substantive and procedural hurdles before being granted a patent monopoly. The U.S. expends an incredible amount of resources ensuring that inventors have overcome those hurdles. In 2009, the U.S. Patent and Trademark Office spent nearly $2 billion on operations, much of that going towards the examination of patent applications.

66. Patent applicants seeking U.S. patent protection often hire patent agents and patent attorneys, at a typical rate of more than $10,000 per application, to draft, file and prosecute patent applications. Those who are successful in obtaining a patent may spend many millions of dollars and utilize significant Court resources enforcing their patent rights.

67. By advertising and labeling non-patented products and technology as patented, the Defendants seek to gain the advantages of the patent system without actually meeting the significant demands required by the system. In doing so, the Defendants harm the U.S and taxpayers of the U.S. by, *inter alia*, (i) undermining the integrity of the patent system, which depends in part on people respecting the patent rights of others and which the U.S. spends billions of dollars to protect and (ii) by depriving the U.S. of revenue that would otherwise be generated through filing fees for original, continuation, and divisional applications, requests for continued examination, appeals, and the like.

68. The Defendants harm consumers by leading them to believe that the falsely advertised and marked products have been determined by the U.S. to embody new and useful improvements when the U.S. has made no such determination. Further, Defendants' conduct harms consumers by leading consumers to believe that the U.S. has granted a patent monopoly so that no other products may legally include the technology embodied in the advertised products.

*See* Plaintiff's Second Amended Complaint. These allege at least a sovereign injury to the United States, which Plaintiff has standing to assert by virtue of Section 292. The above allegations apply equally to all Defendants because each has violated Section 292, resulting in similar harm (though the remedy required to address the harm will likely vary by Defendant). The alleged harm is redressible by this Court, which may assess fines against Defendants as the Court deems appropriate. Thus, Plaintiff has standing to bring this action.

**IV.     Conclusion**

As a *qui tam* relator under Section 292, Plaintiff is not required to show injury to herself caused by Defendant's wrongful conduct.  Rather, Plaintiff is allowed to proceed on the basis of an injury to the United States.  Defendants have injured the sovereign interests of the United States by violating its laws and undermining the patent system.  Plaintiff has standing to bring this action against Defendants for the benefit of the United States.


Date:  June 11, 2010                              Respectfully submitted,


        /s/George Tompkins/
George M. Tompkins, TXBN 24029864
Tompkins P.C.
825 Market Street, Building M, Suite 250
Allen, Texas  75013
214-996-4647 (tel)
469-375-3969 (fax)
George@tompkinsiplaw.com
**ATTORNEY FOR PLAINTIFF**


**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record, who are deemed to have consented to electronic service, are being served this 11th day of June 2010 with a copy of this Document via the Court's CM/ECF system per Local Rule CV-5(a)(3).


        /s/George Tompkins/