**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| SARAH TOMPKINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 6:10-cv-00058 |
| VS. | § | |
| | § | |
| ABLE PLANET INCORPORATED; | § | |
| AMAZON.COM, INC.; | § | |
| AMERICAN RECREATION PRODUCTS, INC.; | § | |
| CENTURY LLC; | § | |
| CENTURY MARTIAL ART SUPPLY, LLC; | § | Jury Trial Demanded |
| MAG INSTRUMENT, INC.; | § | |
| TARGET CORPORATION; | § | |
| THINK OPERATIONS, LLC; | § | |
| WAL-MART STORES, INC.; | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT WAL-MART'S MOTION TO DISMISS**
**PLAINTIFF'S SECOND AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Sarah Tompkins ("Plaintiff" or "Tompkins"), by and through her undersigned

attorney, responds in opposition to Defendant Wal-Mart Stores, Inc.'s ("Wal-Mart") Motion to

Dismiss Plaintiff's Second Amended Complaint (Docket No. 48), as follows:

**Table of Contents**

I. Introduction ...........................................................................................................1

II. Statement of issues to be decided by the Court ....................................................2

III. Plaintiff has standing to bring this *qui tam* action on behalf of the United States..............2

IV. Plaintiff has pleaded facts properly alleging five causes of action against Wa-Mart for violation of Section 292.........................................................................3

    A. Legal Standards for evaluating motions to dismiss under Rule 12(b)(6) .....................3

        1. Elements of a claim for false marking under Section 292 ......................................3

        2. Wal-Mart's arguments regarding the legal standards for dismissal under Rule 12(b)(6) are intentionally misleading. ..................................4

    B. Plaintiff has alleged facts satisfying all elements of Section 292 claims. ..................................................................................................5

        1. Wal-Mart advertises products as patented. ..........................................5

        2. The advertisements are advertisements of Wal-Mart, not the suppliers, but were made using information from the suppliers. ...................8

        3. The advertised products are not patented..........................................9

        4. Wal-Mart acted with intent to deceive the public.................................12

    C. Section 292 claims are not subject to the heightened pleading standards of Rule 9.........................................................................14

    D. Plaintiff has pleaded sufficient detail to satisfy the heightened requirements of Rule 9..............................................................16

V. Conclusion ...........................................................................................................17

## I.    Introduction

**"Award Winning Patented sound quality at an amazing price"**

**"Patented Candle Mode"**

**"Patented hoop rain fly awning over door to maximize rain protection"**

**"Patented Crema Master filter for rich crema every time"**

**"Patented 1-piece anti-colic venting system reduces colic, gas, spit-up and ear infections"**

These are only some of the amazing features of the Able Planet Sound Clarity NC500SC Noise Canceling Headphones,[1] Mini MagLite 2-Cell AA Flashlight Combo Pack,[2] SwissGear Cheval Sport Dome Tent,[3] Briel Cadiz Espresso Machine,[4] and thinkbaby - 5 oz. Baby Bottles[5] advertised and sold at www.walmart.com. The problem with these product exaltations is that, while they may help Wal-Mart sell more products, none of them are true. Further, these five product families represent the results of review of only a few dozen out of the many thousands of products that Wal-Mart advertises as patented. *See* Exhibit 2 in Plaintiff's Response to Mag Motion to Sever (Docket No. 71). A full review would no doubt reveal many, many more unpatented products.

Plaintiff brings this action pursuant to 35 U.S.C. § 292 ("Section 292") against Wal-Mart because of Wal-Mart's advertisement of five families of products as being patented, when they are not; or having certain patented features, when they do not. Wal-Mart made these claims to deceive the public into believing the advertised products are patented so that Wal-Mart could increase its sales of the products. Wal-Mart advertised the products as patented under a policy of

---

[1] Tompkins Declaration II, Exhibit 8
[2] Tompkins Declaration II, Exhibit 9
[3] Tompkins Declaration II, Exhibit 10
[4] Tompkins Declaration II, Exhibit 11
[5] Tompkins Declaration II, Exhibit 12

accepting and publishing any claim regarding patented status by a supplier, without any support for the claim.  Further, Wal-Mart has continued to advertise the unpatented products as patented, even after Plaintiff put Wal-Mart on actual notice of the products' unpatented status.

Wal-Mart's deceitful practiced must be stopped.  Wal-Mart incorrectly asserts that Plaintiff's claim is based on "Wal-Mart's failure to perform independent due diligence on each and every product claim made on every one of the over 100,000 products that it sells."  Wal-Mart Motion to Dismiss, p. 12.  On the contrary, Plaintiff does not propose that Wal-Mart hire counsel to evaluate each of the over 100,000 products it sells; rather, Plaintiff proposes that Wal-Mart stop advertising products as patented.  If, in any given case, Wal-Mart believes that it is particularly important to advertise a product as patented, then Wal-Mart should take some minimum steps to ensure that the advertised product is indeed patented.  What Wal-Mart <u>cannot</u> do is intentionally pass on false information from its suppliers, accepting the commercial benefit of the false claims, while placing the burden of determining the truth "on the public rather than the manufacturer or seller of the article," thus "increase[ing] the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article."  *Clontech Labs. Inc. v. Invitrogen Corp.,* 406 F.3d 1347, 1356-57 (Fed.Cir.2005)

## II.    Statement of issues to be decided by the Court

Wal-Mart's motion requires determination of the following issues:

1.  Whether Plaintiff has standing to bring this Section 292 action against Wal-Mart.

2.  Whether Plaintiff properly alleged a cause of action under Section 292.

## III.    Plaintiff has standing to bring this *qui tam* action on behalf of the United States.

The factual and legal issues regarding Plaintiff's standing to bring this action under Section 292 are identical to those raised in Mag's Motion to Dismiss under Rule 12(b)(1)

(Docket No. 54).   The bases supporting Plaintiff's standing in this action are explained in detail in Plaintiff's Response to Mag's Motion to Dismiss under Rule 12(b)(1) (Docket No. 74). Plaintiff does not believe the arguments need to be repeated here.

**IV.   Plaintiff has pleaded facts properly alleging five causes of action against Wa-Mart for violation of Section 292.**

### A.   Legal Standards for evaluating motions to dismiss under Rule 12(b)(6)

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all facts properly pleaded under Rule 8(a)(2). *See Lowrey v. Tex. A & M Univ. Sys.,* 117 F.3d 242, 247 (5th Cir.1997).   Federal Rule 8(a)(2) requires that a pleading  contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule (8)(2) requires a claimant to plead "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal quotations omitted).   Entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do…"  *Id.*   However, a complaint "does not need detailed factual allegations" to survive a challenge under Rule 12(b)(6).   *Id.*   Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* --- U.S. ----, ----- - ----, ----, 129 S.Ct. 1937, 1949 (2009).   "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* (citing *Twombly*).

### 1.   Elements of a claim for false marking under Section 292

The elements of a false marking claim under Section 292 are "(1) [advertising as patented] an unpatented article and (2) intent to deceive the public."  *The Forest Group, Inc. v.*

*Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009) (citing *Clontech,* 406 F.3d at 1352).

Referring to the first element, an article is unpatented when it is not covered by at least one claim

of a patent.  *See Clontech*, 406 F.3d at 1352.  The second element requires intent to deceive the

public.  *Forest Group*, 590 F.3d at 1300.  Intent to deceive is "a state of mind arising when a

party acts with sufficient knowledge that what it is saying is not so and consequently that the

recipient of its saying will be misled into thinking that the statement is true." *Clontech*, 406 F.3d

at 1352. (citing *Seven Cases v. United States*, 239 U.S. 510, 517-18, 36 S.Ct. 190, 60 L.Ed. 411

(1916)).  The *Clontech* court noted that intent is subjective, but must be established in law by

objective standards.  *Id.*  Thus, intent may be inferred from "the fact of misrepresentation

coupled with proof that the party making it had knowledge of its falsity." *Id.* (internal quotations

and emphasis omitted).

### 2.      Wal-Mart's arguments regarding the legal standards for dismissal under Rule 12(b)(6) are intentionally misleading.

In section I(A) of Wal-Mart's brief, Wal-Mart discusses standing and subject matter

jurisdiction.  Wal-Mart Motion to Dismiss, pp. 5-8.  Then, in section I(B), captioned "Plaintiff

Tompkins Has Failed to Plead a Colorable Claim Under 35 U.S.C. § 292," Wal-Mart refers to

dismissal under Rules 12(b)(1) and 12(b)(6).  *Id.*, p.8.  In that section, Wal-Mart commingles

cases and standards relevant to 12(b)(1) and 12(b)(6) without clearly distinguishing what Rule it

is arguing.  *Id.* For example, Wal-Mart states that "Plaintiff Tompkins Complaint also fails to

plead a colorable claim under the Supreme Court's recent *Twombley* decision and 35 U.S.C. §

292," (a Rule 12(b)(6) issue) and two sentences later cites a court opinion holding "[w]hen a

motion to dismiss is filed under <u>Rule 12(b)(1)</u>, 'the allegations in the complaint are not

controlling . . . and only uncontroverted factual allegations are accepted as true.' *Cedars-Sinai

Medical Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993)." *Id.* (emphasis added).  However,

the standards for a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) are very different. Wal-Mart is attempting to shift the Rule 12(b)(6) dismissal requirements in its favor by commingling those requirements with standards applicable to Rule 12(b)(1). Only the standards relevant to Rule 12(b)(6) should be considered in deciding whether Plaintiff has pleaded a claim under Section 292 in view of *Twombly*. *See Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir.2005) ("Motions to dismiss are rarely granted and generally viewed with disfavor.").

**B.    Plaintiff has alleged facts satisfying all elements of Section 292 claims.**

**1.    Wal-Mart advertises products as patented.**

Relevant allegations from Plaintiff's Second Amended Complaint (Docket No. 40):

**As to Able Planet headphones:**

15.    Defendants Amazon.com, Target, and Wal-Mart each advertise, on their respective websites, Able Planet Noise Canceling Headphones as having "Patented LINX Audio" technology.

16.    Upon information and belief, Defendants Amazon.com, Target, and Wal-Mart each created and posted the advertisements appearing on their respective websites related to the Able Planet headphones. Upon information and belief, Defendant Able Planet manufactures the advertised headphones and was involved in the creation of the aforementioned advertisements.

**As to Mag's Mini-Maglite:**

32.    Defendants Amazon.com and Wal-Mart each advertise, on their respective websites, Mag Instrument's Mini-Maglite as featuring a "patented candle mode."

33.    Upon information and belief, Defendants Amazon.com and Wal-Mart each created and posted the advertisements appearing on their respective websites related to the Mag Instrument Mini-Maglite. Upon information and belief, Defendant Mag Instrument manufactures the advertised Mini-Maglite and was involved in the creation of the aforementioned advertisements.

**As to ARP's tents:**

40. Defendants Amazon.com and Wal-Mart each advertise, on their respective websites, certain ARP tents as featuring a "patented hoop rain fly awning" or a "patented hoop fly frame."

41. Upon information and belief, Defendants Amazon.com and Wal-Mart each created and posted the advertisements appearing on their respective websites related to the ARP tents. Upon information and belief, Defendant ARP manufactures the advertised tents and was involved in the creation of the aforementioned advertisements.

**As to Briel espresso makers:**

49. Defendants Amazon.com, Target and Wal-Mart each advertise, on their respective websites, certain Briel espresso makers as featuring a patented "Crema Master" filter.

50. Upon information and belief, Defendants Amazon.com, Target, and Wal-Mart each created and posted the advertisements appearing on their respective websites related to the Briel espresso makers.

**As to thinkbaby bottles:**

57. Defendants Amazon.com and Wal-mart each advertise, on their respective websites, certain Think Operations baby bottles as having a patented anti-colic, vented nipple.

58. Upon information and belief, Defendants Amazon.com and Wal-Mart each created and posted the advertisements appearing on their respective websites related to the advertised baby bottles. Upon information and belief, Defendant Think Operations manufactures the advertised bottles and was involved in the creation of the aforementioned advertisement.

The product web pages complained of in Plaintiff's Second Amended Complaint are clearly advertisements. To "advertise" means "[t]o make public announcement of, especially to proclaim the qualities or advantages of (a product or business) so as to increase sales." The American Heritage Dictionary of the English Language, Fourth Edition (Houghton Mifflin 2006). At least two recent decisions considering the issue have held expressly that a website describing features of a product is an advertisement under Section 292. See, e.g., *Presidio Components Inc. v. American Technical Ceramics Corp.* --- F.Supp.2d ----, 2010 WL 1462757, *42 (S.D.Cal. 2010) ("Presidio also advertised the BB capacitors in its catalog and on its website

6

as practicing the '356 patent"); *Vantage Trailers, Inc. v.* Beall Corp, 2008 WL 4746288, *2 (S.D.Tex. 2008) ("Plaintiff has stated a claim that the representations on Defendant's website constitute at least one "offense" under section 292(a)").  Further, outside the context of Section 292, many courts have held that descriptions on a website constitute advertising.  *See*, e.g., *Lahoti v. VeriCheck, Inc.* 586 F.3d 1190, 1193-94 (9th Cir. 2009) (referring to claims made on website as advertising); *Schering-Plough Healthcare Products, Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 511 (7th Cir  2009) (same); *Andersen Corp. v. Pella Corp.*, 300 Fed. Appx. 893, 898 (Fed. Cir. 2008) (same); *Wolf Appliance, Inc. v. Viking Range Corp.*, 686 F.Supp.2d 878, 889 (W.D.Wis. 2010) (same).

Attached as Exhibits 8-12 to the accompanying Tompkins Declaration II are sample advertisements from walmart.com for each product family named against Wal-Mart in Plaintiff's Second Amended Complaint.  Each of these is a public announcement (being accessible to the public via a well-known website).  Each proclaims the qualities or advantages of the products: *See, e.g.,* Exhibit 8 ("Award Winning Able Planet NC500SC Noise Canceling Headphones, with LINX Audio Technology"); Exhibit 9 ("Until its inception, no flashlight of this size incorporated the features, functions and unique design elements of the Mini MagLite 'AA' flashlight"); Exhibit 10 ("The SwissGear Cheval sport dome backpacking tent is built for comfort on the trails"); Exhibit 11 ("Turbo Jet frother produces plentiful dry steam for a thick milk froth for cappuccinos and lattés"); Exhibit 12 ("Free of Bisphenol A, PVC, lead and nitrosamines").  Each advertisement is made to increase sales, offering an easy "add to cart" button (except for the Able Planet headphones, which are not available at this time).

Further, each of the attached websites clearly tout the products as being patented:  Exhibit 8 ("Award Winning Patented sound quality at an amazing price" and "Patented LINX AUDIO

7

technology"); Exhibit 9 ("Patented Candle Mode"); Exhibit 10 ("Patented hoop rain fly awning over door to maximize rain protection"); Exhibit 11 ("Patented Crema Master filter for rich crema every time"); Exhibit 12 ("Patented 1-piece anti-colic venting system reduces colic, gas, spit-up and ear infections").   Accordingly, under both dictionary meaning and case law, these web pages constitute advertising a product as patented for the purposes of Section 292.

> **2.     The advertisements are advertisements of Wal-Mart, not the suppliers, but were made using information from the suppliers.**

Wal-Mart argues that "there can be no dispute *that Walmart's suppliers*, not Walmart, designed, created, made, and printed any packaging, literature, and all material portions of any written materials, for the accused products."   Motion to Dismiss, pp. 9-10 (emphasis original). Plaintiff does not contend that Wal-Mart is responsible for the <u>packaging</u> of any of the accused products.   Rather, Plaintiff's claims are based on Wal-Mart's <u>advertising</u> the products.   *See e.g.,* Second Amended Complaint, ¶ 16.   Wal-Mart also alleges that "Tompkins repeatedly acknowledges in her Complaint *that Walmart's suppliers*, at least in part, created all but one of the alleged advertisements for the accused products."   Wal-Mart Motion to Dismiss, p. 10 (emphasis original). This is wrong.   Plaintiff clearly alleges that Wal-Mart "<u>created</u> and posted" its advertisements.   *See, e.g.,* Second Amended Complaint, ¶ 16 (emphasis added).

That the advertisements in question are advertisements of Wal-Mart is clear from a review of Exhibits 8-12.   The Wal-Mart name and logo are prominently displayed on each of these advertisements.   The advertisements allow a user to purchase the advertised item from Wal-Mart by simply clicking an "add to cart" button.   The advertisements feature Wal-Mart specific features, such as Wal-Mart financing options.   Finally, the advertisements feature a copyright notice naming Wal-Mart Stores, Inc. as the copyright claimant.

Although Plaintiff has alleged that the suppliers were involved in creating the advertisements, in that at least some of the information Wal-Mart used to create the advertisements came from the suppliers, this does not change the fact that the advertisements are Wal-Mart advertisements made on Wal-Mart's website to help Wal-Mart sell products.   Wal-Mart is one of the largest corporations in the world and is the world's largest retailer.   No supplier is powerful enough to dictate what information Wal-Mart will include in advertisements on its website.   Accordingly, regardless of what information Wal-Mart was given, it is Wal-Mart that chose what information to incorporate in its advertisements.   Further, Wal-Mart's success comes in large part from its goodwill with its consumers.   Exhibit 13 ("An Introduction to Wal-Mart.com").   That goodwill comes, in part, from Wal-Mart's customer's ability to rely on Wal-Mart to provide quality products and truthful advertising.   To protect that goodwill, Wal-Mart is selective in choosing the products it sells, and it reviews information provided by its suppliers before incorporating that information in advertisements.[6]   Accordingly, Wal-Mart cannot deny responsibility for its advertisements merely because some of the information was provided to it by suppliers.

### 3.      The advertised products are not patented.

Relevant allegations:

**As to Able Planet Headphones:**

18.  Despite a diligent search, Plaintiff was unable to locate any patent owned or otherwise affiliated with Defendant Able Planet with claims that could be construed as protecting technology for the advertised headphones. Counsel for Defendant Able Planet has proffered several patents, which it claims cover the advertised headphones. However, counsel for Plaintiff has reviewed these patents and none of them cover, or could be reasonably considered to cover, the advertised headphones. Defendant Able Planet advertised the headphones as patented with knowledge that the advertised headphones are not patented.

---

[6] Plaintiff does not yet have evidence supporting this fact, as that evidence is in the hands of Wal-Mart. Rather, the assertion is made on the basis of common sense.

**As to Mag's Mini-Maglite:**

35. On information and belief, the Mini-Maglite was introduced over 25 years ago and has at all times since its introduction, included a "candle mode". Accordingly, any valid claim covering the "candle mode" feature of the Mini-Maglite is necessarily long expired. Nonetheless, Defendant Mag Instrument indicates in advertising that the "candle mode" of the Mini-Maglite is patented with knowledge that it is not patented.

**As to ARP's tents:**

43. Despite an exhaustive search, Plaintiff was unable to locate any patent owned or otherwise affiliated with Defendant ARP with claims that could be construed as protecting technology for the rain fly of the tent shown in the aforementioned advertisement. The tent packaging is marked with two patent numbers: D478,645 and US 6,450,186. However, counsel for Plaintiff has reviewed these patents and none of them covers, nor could they be reasonably considered to cover, the rain fly technology described in the advertising. Based on said search and the patent markings on the packaging, Plaintiff believes, and thereupon alleges, that no such patent exists. Notwithstanding, Defendant ARP advertised the technology for the rain fly as patented with knowledge that the advertised tent is not patented.

**As to Briel's espresso makers:**

52. Despite an exhaustive search, Plaintiff was unable to locate any patent owned or otherwise affiliated with Briel with claims that could be construed as protecting technology for an espresso filter. Additionally, the neither advertised product nor product packaging is marked with any patent number. Based on said search and lack of patent markings, Plaintiff believes, and thereupon alleges, that no such patent exists which covers the technology asserted in the advertisements.

**As to thinkbaby bottles:**

60. Despite an exhaustive search, Plaintiff was unable to locate any patent owned or otherwise affiliated with Defendant Think Operations with claims that could be construed as protecting technology for a baby bottle with an anti-colic, vented nipple as asserted in the aforementioned advertisement. Additionally, neither the advertised product nor product packaging is marked with any patent number. Further, counsel for Think Operations has indicated that the baby bottles may be covered by patent protection in Taiwan but has not indicated that the baby bottles are patented in the U.S. Based on said search and lack of patent markings, Plaintiff believes, and thereupon alleges, that no patent exists which covers the technology asserted in the advertisements. Notwithstanding, Defendant Think Operations advertised the baby bottles as patented with knowledge that the advertised baby bottles are not patented.

Each of these products is clearly alleged to be unpatented.  Further, per the requirements of *Twombly*, each is supported by facts which "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.   Specifically, Plaintiff alleges that an exhaustive search was performed and that Plaintiff was unable to locate any patent with a claim covering the product or product feature asserted to be patented.   The exhaustive search for each product included (1) identifying the manufacturer, (2) determining the legal name of the manufacturer, (3) identifying all other persons or entities associated with the manufacturer, (4) searching for all patents affiliated in any way with or licensed to any of the identified persons or entities and which could be related to the advertised product, and (5) reviewing the patents to be certain that no claim could be reasonably believed to cover the advertised product or product feature.  *See* Tompkins (George) Decl.

In addition, attorneys representing certain suppliers—Able Planet, Century, Mag, and Think—have proffered patents, which they alleged cover the advertised products.  Plaintiff has pleaded specifically with respect to Able Planet and Century that counsel has reviewed the patents, and they are inapplicable.  If necessary, Plaintiff can amend to allege the same with respect to a design patent identified by Mag.  With respect to Think, Plaintiff has pleaded that documents purported to be a Taiwanese patent was provided to Plaintiff, but that the document does not satisfy the "patented" requirement of Section 292.  These allegations raise Plaintiff's right to relief above a speculative level.  In the course of discovery, Plaintiff will provide more specific information regarding a comparison of the product and the identified patents.  However, that detail is not required at the pleading stage.  *See, e.g., Actus, LLC v. Bank of America Corp.*, 2010 WL 547183, *2 (E.D.Tex. 2010) ("The Court does not require that plaintiffs in a patent infringement lawsuit attach fully-developed infringement contentions to its complaint.")

### 4.    Wal-Mart acted with intent to deceive the public.

"Intent need not, and can rarely be, proven by direct evidence.  Rather, intent to deceive is generally inferred from the facts and circumstances surrounding the applicant's overall conduct.  *Leviton Mfg. Co., Inc. v. Universal Sec. Instruments, Inc*., --- F.3d ----, 2010 WL 2160917, *8 (Fed.Cir. 2010) (quoting *Impax Labs., Inc. v. Aventis Pharmaceuticals, Inc*., 468 F.3d 1366, 1374-75 (Fed.Cir.2006)).   "The drawing of inferences, particularly in respect of an intent-implicating question ... is peculiarly within the province of the fact finder that observed the witnesses." *Molins PLC v. Textron, Inc*., 48 F.3d 1172, 1181 (Fed.Cir.1995) (quoting *Rolls-Royce Ltd. v. GTE Valeron Corp*., 800 F.2d 1101, 1110, 231 USPQ 185, 192 (Fed.Cir.1986)). As such, "[i]ntent to mislead or deceive is a factual issue that, if contested, is not readily determined within the confines of [summary judgment]." *KangaROOS U.S.A. v. Caldor, Inc*., 778 F.2d 1571, 1576 (Fed.Cir. 1985).  Summary procedures should be used sparingly "…where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." *Poller v. Columbia Broadcasting System, Inc*., 368 U.S. 464, 473 (1962).   If making fact determinations regarding state of mind is inappropriate at summary judgment, it is even less appropriate on a motion to dismiss under Rule 12(b)(6).  With respect to claims under Section 292, the Federal Circuit has stated that intent to deceive the public may be inferred from "the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity." *Clontech*, 406 F.3d at 1352.  However, neither evidence, nor proof, nor even "detailed factual allegations" are necessary to survive a challenge under Rule 12(b)(6).  *Twombly*, 550 U.S. at 555.  Accordingly, Wal-Mart's Motion to Dismiss should be denied, if Plaintiff has pleaded any facts which could support a reasonable inference that Wal-Mart acted with intent to deceive the public.  *See Iqbal,* 129 S.Ct. 1937, 1949-50.

Plaintiff has pleaded the following facts with respect to Wal-Mart's knowledge and intent:

> Wal-Mart advertises thousands of items sold through its website as being patented. *See ¶* 12.

> Wal-Mart does not make any independent attempt to determine whether products advertised on its website as patented are, in fact, patented. *See* ¶13.

> Wal-Mart advertised the Able Planet headphones as patented to increase sales of the advertised headphones by, without limitation, causing consumers to believe (i) that the headphones had been determined by the United States Patent and Trademark Office to be new and useful and (ii) that the government of the United States granted Able Planet the exclusive right to make headphones with the utility of the advertised headphones. *See* ¶ 17.

> Wal-Mart advertised the Able Planet headphones as patented with (i) actual knowledge that the advertised headphones are not patented or (ii) under a policy of refusing to confirm the patent status of products advertised as patented and with the knowledge of a high likelihood that at least a significant number of the hundreds or thousands of products advertised by them as being patented are not patented. *See* ¶ 19.[7]

These allegations support at least two reasonable inferences regarding Wal-Mart's intent and knowledge.  First, Wal-Mart had a motive to cause consumers to believe the products are patented—to increase sales.  This inference is further supported by an examination of the nature of the specific statements regarding patent status.  For example "Patented Crema Master filter for rich crema every time" (Exhibit 11)[8] is clearly designed to promote a feature claimed to be patented.  It is not merely a statement intended to convey a fact regarding patents, such as patent number marking to comply with 35 U.S.C. § 287.

---

[7] With respect to Wal-Mart's knowledge, the allegations are similar as to each product family with the exception of the Mini-Maglite.  With respect to the Mini-Maglite, Plaintiff believes some relevant person at Wal-Mart must be familiar with the long history of the product and realize that if the "candle mode" was ever patented, it no longer is.

[8] Although the particular statements made in each advertisement were not pleaded in Plaintiff's Second Amended Complaint, the nature, purpose and location of the statements were pleaded, giving Defendants sufficient information to evaluate Plaintiff's claims.  However, if the Court believes the particular statements are necessary to state a claim, Plaintiff would ask the Court for leave to amend to allege those statements.

Second, the allegations support the inference that Wal-Mart knew or should have known that the products are not patented.  Wal-Mart advertises thousands of items on its website as patented.  Although Wal-Mart asserts that the information regarding patent status came from its suppliers, Wal-Mart necessarily knew that out of the thousands of products that its suppliers identified as "patented," at least some of them would not be.  Nonetheless, Wal-Mart did not make even the slightest attempt to avoid advertising unpatented products as patented.  Thus, Wal-Mart had either actual or constructive knowledge that the advertised products identified in Plaintiff's Second Amended Complaint were not patented.

Because Plaintiff has pleaded facts showing at least a plausible right to relief under Section 292, Wal-Mart's motion to dismiss should be denied.

**C.     Section 292 claims are not subject to the heightened pleading standards of Rule 9.**

Defendants Amazon.com, Mag, and Wal-Mart argue that Plaintiff's claims pursuant to Section 292 are subject to the heightened pleading requirement of Rule 9.  *See* Amazon.com Motion to Dismiss (Docket No. 53), p. 13; Mag Motion to Dismiss (Docket No. 55), p. 7; Wal-Mart Motion to Dismiss (Docket No. 48), p.12.   Plaintiff disagrees.   Federal Rule of Civil Procedure 9 requires a heightened pleading standard for certain matters.  Rule 9(b), captioned "Fraud or Mistake; Condition of Mind" provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  This action is for false patent marking, not fraud.

As discussed above, the two elements of a Section 292 false marking claim are "(1) marking an unpatented article and (2) intent to deceive the public." *Forest Group*, 590 F.3d at 1300.  In contrast a plaintiff asserting fraud must prove: (1) a material false misrepresentation,

(2) the representation was either known to be false when made or was asserted without knowledge of its truth, (3) the representation was intended to be acted upon, (4) the representation was relied upon, and (5) injury resulted. *See, e.g.*, *Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 394 (5th Cir. 2010). The additional elements of a fraud claim versus Section 292 relate to the misrepresentation—that it was material and false, that it was indented to be acted upon, and that it was relied upon. This distinction is important in light of the "particularity" which courts require under Rule 9(b).

To sufficiently plead a fraud claim the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (internal quotations omitted); *see also*, *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir.2008). ("Put simply, Rule 9(b) requires the complaint to set forth the who, what, when, where, and how of the events at issue.") (internal quotations omitted). These special pleading requirements, like the difference between the elements of a fraud claim and a claim under Section 292, all relate to the circumstances of the misrepresentation itself. In contrast, there is no need to require heightened pleading to state a claim under Section 292, because the specifics of the misrepresentation are given in the statute itself. *See* 35 U.S.C. § 292 (prohibiting marking upon, or affixing to, or using in advertising the word patent on an unpatented article). Further, the acts comprising the misrepresentation are necessarily made in public, so details regarding time and place are unnecessary. While a claim for fraud and a claim under Section 292 share the element of intent, Rule 9(b) specifically provides that intent may be alleged generally. *See* Fed. R. Civ. P. 9(b).

In support of their argument, Defendants point to the decision of the Northern California District Court in *Juniper Networks v. Shipley*, 2009 WL 1381873, *4 (N.D. Cal. May 14, 2009), where that court held that Rule 9(b) applies to Section 292 claims.  However, that case is at odds with the implication by this court in *Astec America, Inc. v. Power-One, Inc*. that Rule 9(b) does not apply to such claims.  See *Astec America, Inc. v. Power-One, Inc*., 2008 WL 1734833, *12 (E.D.Tex.) (John D. Love, Magistrate Judge) ("Power-One provides no case authority for its proposition linking a false marking claim to an averment of fraud.  On the other hand, courts have generally interpreted the scope of Rule 9(b) as limited to allegations of fraud and mistake.") (citing *Swierkiewicz v. Sorema N .A*., 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).  For the reasons set forth above, this Court should follow the logic of *Astec America* and hold that Plaintiff's claims are not subject to the heightened pleading standard of Rule 9(b).

## D. Plaintiff has pleaded sufficient detail to satisfy the heightened requirements of Rule 9.

Even if the heightened pleading standard of Rule 9(b) is applicable to Section 292 claims, Plaintiff's allegations are sufficient.  While the Federal Circuit has never held that Rule 9(b) applies to claims under Section 292 and, therefore, has not opined on what would be required, some guidance may be found in *Exergen Corp. v. Wal-Mart Stores, Inc.*, in which the court applied Rule 9(b) to allegations of inequitable conduct.  575 F.3d 1312, 1328 (Fed. Cir. 2009).  In *Exergen*, the court held that to satisfy the "particularity" requirement of Rule 9, a pleading "must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO."  *Id.*  The Federal Circuit held that "although 'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of

16

the material misrepresentation and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328-29.  The court further clarified that "[a] reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id.* at 1329, fn. 5.  The requirement to plead facts supporting a reasonable inference does not add anything to the requirements of *Twombly* and *Iqbal*, discussed above.  Therefore, the only additional pleading requirements to satisfy Rule 9(b) are the "who, what, when, where and how" of the misrepresentation.  *Id.* at 1328; see also *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d at 339 ("Put simply, Rule 9(b) requires the complaint to set forth the who, what, when, where, and how of the events at issue.") (internal quotations omitted).

Plaintiff has adequately pled the "who, what, when, where and how" of the Defendants' wrongful conduct.  The "who" are the Defendants and the public.  *See, e.g.,* ¶ 17.  The "what" are statements that products are patented, when they are not.  *See, e.g.*, ¶¶ 15, 18.  The "when," though not explicitly alleged, is implicitly alleged as ongoing as of the date of the Second Amended Complaint (further, the false patent advertising was ongoing as least as of the date shown in Exhibits 8-12).  Finally, the "where" and "how" are by posting advertisements on walmart.com.  *See*, *e.g.,* ¶¶ 12, 15.  Therefore, even if the heightened pleading requirement of Rule 9(b) is applied, Plaintiff's Second Amended Complaint has satisfied it.

## V.     Conclusion

Plaintiff has more than adequately pleaded causes of action against Wal-Mart under Rule 8 or Rule 9(b) of the Federal Rules of Civil Procedure by alleging specific facts supporting at least a reasonable inference that Wal-Mart has advertised unpatented products as patented for the purpose of deceiving the public in violation of Section 292.  Additionally, as discussed in

Plaintiff's Response to Mag's Motion to Dismiss under Rule 12(b)(1), Plaintiff has standing to assert her claims against Wal-Mart and this Court has subject matter jurisdiction to hear claims. Therefore, Wal-Mart's Motion to Dismiss Plaintiff's Second Amended Complaint should be denied.


Date:  June 11, 2010                                       Respectfully submitted,


                                                            _____/s/George Tompkins/_____
                                                            George M. Tompkins, TXBN 24029864
                                                            Tompkins P.C.
                                                            825 Market Street, Building M, Suite 250
                                                            Allen, Texas  75013
                                                            214-996-4647 (tel)
                                                            469-375-3969 (fax)
                                                            George@tompkinsiplaw.com
                                                            **ATTORNEY FOR PLAINTIFF**


## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record, who are deemed to have consented to electronic service, are being served this 11th day of June 2010 with a copy of this Document via the Court's CM/ECF system per Local Rule CV-5(a)(3).


                                                            _____/s/George Tompkins/_____