**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| SARAH TOMPKINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 6:10-cv-00058 |
| VS. | § | |
| | § | |
| ABLE PLANET INCORPORATED; | § | |
| AMAZON.COM, INC.; | § | |
| AMERICAN RECREATION PRODUCTS, INC.; | § | |
| CENTURY LLC; | § | |
| CENTURY MARTIAL ART SUPPLY, LLC; | § | Jury Trial Demanded |
| MAG INSTRUMENT, INC.; | § | |
| TARGET CORPORATION; | § | |
| THINK OPERATIONS, LLC; | § | |
| WAL-MART STORES, INC.; | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT MAG INSTRUMENT, INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Sarah Tompkins ("Plaintiff" or "Tompkins"), by and through her undersigned attorney, responds in opposition to Defendant Mag Instrument, Inc.'s ("Mag") Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Rules 12(b)(6) and 9(b) (Docket No. 55), as follows:

**I.      Introduction**

Anthony Maglica introduced the first Maglite flashlight in 1979.  *See* Tompkins III Decl., Exhibit 14.  Then, and now, Mag's flashlights are known for their durability and reliability and have won numerous design awards.  *See* Tompkins III Decl., Exhibit 15.  Mr. Maglica built his

still privately-owned company into an enterprise with an estimated $250 million in annual sales. *See* Tompkins III Decl., Exhibit 16.

Mag introduced the Mini-Maglite in 1984. *See* Exhibit 14. The Mini-Maglite contained many features of its bigger brothers. However, the Mini-Maglite included at least one new feature—a "candle mode." The candle mode is described by Mag in the diagram below reproduced from Mag's website.



*See* Tompkins III Decl., Exhibit 17.

Even though its first Mini-MagLite with a "candle mode" was first introduced over twenty five years ago, and no valid, unexpired patent granting exclusive right to a "candle" mode exists, Mag nevertheless advertises the candle mode as patented.

In support of its argument that the "candle mode" is patented, Mag points to a design patent—D530,438—the sole claim of which is an "ornamental design for a miniature flashlight." *See* Exhibit 18. However, the "candle mode" is advertised as a functional feature, not an

ornamental one.  *See* above illustration; *see also* Tompkins Decl., Exhibit 5 ("The Mini Maglite boasts a unique candle mode that allows you to remove the head and expose the bulb to shed light in all directions, just like a candle. You can flip the head over and place it on a solid surface to create a sturdy holder for the "candle"--a great option when you're camping, at an outdoor concert, or entertaining after dark in your backyard."); *see also* Tompkins Decl., Exhibit 6 ("Mini Maglite converts quickly into Candle Mode in three easy steps: unscrew the flashlight head, place the head on a table, and insert the flashlight barrel into the head").  Thus, even if the D530,438 is a valid patent, the Mini-Maglite is not patented as advertised.

## II.     Statement of Issues to be decided

The sole issue to be determined in this motion is whether Plaintiff has cause of action against Mag under Section 292.

## III.    Background

The background of this case is discussed in detail in Plaintiff's Response in Opposition to Defendant Mag's Motion to Sever (Docket No. 71).

## IV.    Plaintiff has pleaded facts showing a cause of action against Mag under Section 292.

### A.     Legal Standards for evaluating motions to dismiss under Rule 12(b)(6)

A court ruling on a motion to dismiss under Rule 12(b)(6) must review the pleadings to determine whether the plaintiff has properly pleaded, under Rule 8(a)(2), "grounds for entitlement to relief-including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor,* 503 F.3d 397, 401 (5th Cir.2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  Federal Rule 8(a)(2) requires a pleading seeking relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

3

do…" *Twombly*, 550 U.S. at 555 (internal quotations omitted).  Rather, Rule (8)(2) requires a claimant to plead "enough to raise a right to relief above the speculative level." *Id*.  However, a complaint "does not need detailed factual allegations" to survive a challenge under Rule 12(b)(6).  *Id*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* --- U.S. ----, ---- - ----, ----, 129 S.Ct. 1937, 1949-50 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*).

**B.     Elements of a claim for false marking under Section 292.**

The elements of a false marking claim under Section 292 are "(1) [advertising] an unpatented article and (2) intent to deceive the public."  *The Forest Group, Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009) (citing *Clontech Labs. Inc. v. Invitrogen Corp.,* 406 F.3d 1347, 1352 (Fed.Cir.2005)).  Referring to the first element, an article is unpatented when it is not covered by at least one claim of a patent.  *See Clontech*, 406 F3d at 1352.  The second element requires intent to deceive the public, which the Federal Circuit has said is "a state of mind arising when a party acts with sufficient knowledge that what it is saying is not so and consequently that the recipient of its saying will be misled into thinking that the statement is true."  *Id.* (citing *Seven Cases v. United States*, 239 U.S. 510, 517-18, 36 S.Ct. 190, 60 L.Ed. 411 (1916)).  The *Clontech* court noted that intent is subjective, but must be established in law by objective standards.  *Id.*  Thus, intent may be inferred from "the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity."  *Id.* (internal quotations and emphasis omitted).

**C.      Plaintiff has alleged specific facts supporting each and every element of her claim against Mag under Section 292.**

      **1.      Plaintiff has properly pleaded that Mag advertised products as patented.**

Relevant allegations from Plaintiff's Second Amended Complaint (Docket No. 40):

32. Defendants Amazon.com and Wal-Mart each advertise, on their respective websites, Mag Instrument's Mini-Maglite as featuring a "patented candle mode."

33. Upon information and belief, Defendants Amazon.com and Wal-Mart each created and posted the advertisements appearing on their respective websites related to the Mag Instrument Mini-Maglite. Upon information and belief, Defendant Mag Instrument manufactures the advertised Mini-Maglite and was involved in the creation of the aforementioned advertisements.

The product web pages complained of in Plaintiff's Second Amended Complaint are clearly advertisements.  To "advertise" means "[t]o make public announcement of, especially to proclaim the qualities or advantages of (a product or business) so as to increase sales."  The American Heritage Dictionary of the English Language, Fourth Edition (Houghton Mifflin 2009).  At least two recent decisions considering the issue have held that a website describing features of a product is an advertisement under Section 292.  *See, e.g.*, *Presidio Components Inc. v. American Technical Ceramics Corp.* --- F.Supp.2d ----, 2010 WL 1462757 (S.D.Cal. 2010) ("Presidio also advertised the BB capacitors in its catalog and on its website as practicing the ′356 patent"); *Vantage Trailers, Inc. v. Beall Corp*, 2008 WL 4746288, \*2 (S.D.Tex. 2008) (representations on a website constitute offense under Section 292).  Further, outside the context of Section 292, many courts have held that descriptions on a website constitute advertising.  *See, e.g.*, *Lahoti v. VeriCheck, Inc*.  586 F.3d 1190 (9th Cir. 2009) (referring to claims made on website as advertising); *Wolf Appliance, Inc. v. Viking Range Corp.*, 686 F.Supp.2d 878, 889 (W.D.Wis. 2010) (same); *Schering-Plough Healthcare Products, Inc. v. Schwarz Pharma, Inc.*,

586 F.3d 500, 511 (7th Cir  2009) (same); *Andersen Corp. v. Pella Corp.*, 300 Fed. Appx. 893, 898 (Fed. Cir. 2008) (same); *American Century Proprietary Holdings, Inc. v. American Century Cas.* Co., 295 Fed.Appx. 630, 632 (5th Cir. 2008) (referring to a website as a channel of advertising).

Examples of offending advertisements are attached as Tompkins Decl., Exhibits 3 & 4 to Plaintiff's Response to Mag's Motion to Sever (Docket No. 71).  Each of Exhibits 3 & 4 is a public announcement (being accessible to the public via a well-known websites).  Each proclaims the qualities or advantages of the products.  *See*, *e.g.*, Exhibit 3 ("From one of the most trusted names in quality handheld flashlights, the Mini Maglite features the same durable construction of all of its larger peers."); Exhibit 4 ("Until its inception, no flashlight of this size incorporated the features, functions and unique design elements of the Mini MagLite 'AA' flashlight.").  Further, each of the attached websites clearly touts the products as being patented: Exhibits 3 & 4 ("Patented Candle Mode").  Accordingly, under both the dictionary meaning and case law, these web pages constitute advertising a product as patented for the purposes of a claim under Section 292.  Although Exhibits 3 & 4 are advertisements of Amazon and Wal-Mart, respectively, Plaintiff has alleged (and Amazon and Wal-Mart have indicated) that the advertisements were made at least in part using information provided by Mag.  Accordingly, Mag is liable alongside Amazon and Wal-Mart for the violation of Section 292.

### 2.    The advertised products are not patented.

Relevant allegations:

35. On information and belief, the Mini-Maglite was introduced over 25 years ago and has at all times since its introduction, included a "candle mode". Accordingly, any valid claim covering the "candle mode" feature of the Mini-Maglite is necessarily long expired. Nonetheless, Defendant Mag Instrument indicates in advertising that the "candle mode" of the Mini-Maglite is patented with knowledge that it is not patented.

Plaintiff alleged that because the Mini-Maglite's "candle mode" was introduced over 25 years ago, any valid claim covering a "candle mode," assuming one ever existed, is necessarily long expired. Mag's only challenge to this allegation is that its product is patented under design patent D530,438. *See* Mag Motion to Dismiss p. 13. However, D530,438 is a design patent covering the "ornamental design for a miniature flashlight." *See* Exhibit 18. Yet, Exhibits 3 & 4 are not advertising that an <u>ornamental design</u> is patented, but rather that a "<u>candle mode</u>" is patented. The word "mode," denotes functionality. The most relevant definition of "mode" from the American Heritage Dictionary of the English Language, Fourth Edition (Houghton Mifflin 2006) defines "mode" as "[a] given condition of functioning; a status: *The spacecraft was in its recovery mode.*" Thus, the phrase "candle mode," refers to a condition of functioning as a candle. This meaning is verified by other material from Mag describing the function of the "candle mode." For example: "The Mini Maglite boasts a unique candle mode that allows you to remove the head and expose the bulb to shed light in all directions, just like a candle. You can flip the head over and place it on a solid surface to create a sturdy holder for the 'candle'--a great option when you're camping, at an outdoor concert, or entertaining after dark in your backyard." Tompkins Decl., Exhibit 5. Also, "Mini Maglite converts quickly into Candle Mode in three easy steps: unscrew the flashlight head, place the head on a table, and insert the flashlight barrel into the head." Tompkins Decl., Exhibit 6. These descriptions show that Mag's assertion of a "patented candle mode" was intended to imply that Mag has a patent giving it the exclusive right to sell a flashlight with candle functionality as shown in the illustration at the beginning of this brief. Mag has no such patent. Therefore, the advertised product is not patented.

### 3.      Mag acted with intent to deceive the public.

"Intent need not, and can rarely be, proven by direct evidence.  Rather, intent to deceive is generally inferred from the facts and circumstances surrounding the applicant's overall conduct." *Leviton Mfg. Co., Inc. v. Universal Sec. Instruments, Inc*., --- F.3d ----, 2010 WL 2160917, *8 (Fed.Cir. 2010) (quoting *Impax Labs., Inc. v. Aventis Pharmaceuticals, Inc*., 468 F.3d 1366, 1374-75 (Fed.Cir.2006)).   "The drawing of inferences, particularly in respect of an intent-implicating question ... is peculiarly within the province of the fact finder that observed the witnesses." *Molins PLC v. Textron, Inc*., 48 F.3d 1172, 1181 (Fed.Cir.1995) (quoting *Rolls-Royce Ltd. v. GTE Valeron Corp*., 800 F.2d 1101, 1110, 231 USPQ 185, 192 (Fed.Cir.1986)). As such, "[i]ntent to mislead or deceive is a factual issue that, if contested, is not readily determined within the confines of [summary judgment]." *KangaROOS U.S.A. v. Caldor, Inc*., 778 F.2d 1571, 1576 (Fed.Cir. 1985).  Summary procedures should be used sparingly "…where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot." *Poller v. Columbia Broadcasting System, Inc*., 368 U.S. 464, 473 (1962).  If making fact determinations regarding state of mind is inappropriate at summary judgment, it is even less appropriate on a motion to dismiss under Rule 12(b)(6).  With respect to claims under Section 292, the Federal Circuit has stated that intent to deceive the public may be inferred from "the fact of misrepresentation coupled with proof that the party making it had knowledge of its falsity." *Clontech*, 406 F.3d at 1352.  However, neither evidence, nor proof, nor even "detailed factual allegations" are necessary to survive a challenge under Rule 12(b)(6).  *Twombly*, 550 U.S. at 555.  Accordingly, Mag's Motion to Dismiss should be denied, if Plaintiff has pleaded any facts which could support a reasonable inference that Mag acted with intent to deceive the public.  *See Iqbal,* 129 S.Ct. 1937, 1949-50.

Plaintiff has pleaded the following facts with respect to Mag's knowledge and intent:

34.   Upon information and belief, Defendants Amazon.com, Wal-Mart, and Mag Instrument advertised the Mini-Maglite as patented to increase sales of the advertised Mini- MagLite by, without limitation, causing consumers to believe that the government of the United States continues to grant Mag Instrument the exclusive right to make flashlights with the advertised "candle mode."

35.   On information and belief, the Mini-Maglite was introduced over 25 years ago and has at all times since its introduction, included a "candle mode". Accordingly, any valid claim covering the "candle mode" feature of the Mini-Maglite is necessarily long expired. Nonetheless, Defendant Mag Instrument indicates in advertising that the "candle mode" of the Mini-Maglite is patented with knowledge that it is not patented.

These allegations support the inference that reason Mag advertised its Mini-Maglite as patented is to increase sales.  This inference is further supported by an examination of the nature of the specific statement regarding patent status—"patented candle mode."  Exhibits 3 & 4. "Patented candle mode" is clearly designed to promote the "candle mode" feature claimed to be patented.  Further, Mag separately advertises other specific benefits of its "candle mode"—"The Mini Maglite boasts a unique candle mode that allows you to remove the head and expose the bulb to shed light in all directions, just like a candle. You can flip the head over and place it on a solid surface to create a sturdy holder for the 'candle'--a great option when you're camping, at an outdoor concert, or entertaining after dark in your backyard."  Tompkins Decl., Exhibit 5.  Thus, the statements are made to increase product sales by causing the public to believe that the flashlight has patented benefits, and not merely to convey a fact regarding patents, such as patent number marking to comply with 35 U.S.C. § 287.

Second, the allegations support the inference that Mag knew that its products were not patented.  Indeed, Mag's knowledge cannot be denied.  Anthony Maglica is the designer of the Mini-Maglite, the inventor named in the patent Mag asserts to be relevant, and to this day remains the owner and President of Mag.  *See* Zechinni Delaration in Support of Mag's Motion to Transfer (Docket No. 66).  Since Mr. Maglica has been involved through the history of the

development and patenting of the Mini-Maglite, his knowledge regarding the truth of its features and patent status is undeniable. Because he is the owner and President of Mag, his knowledge is imputed to the company. Thus, Plaintiff has pleaded facts showing at least a plausible right to relief against Mag under Section 292, and Mag's motion to dismiss should be denied.

**D.      Section 292 claims are not subject to the heightened pleading standards of Rule 9.**

Defendants Amazon.com, Mag, and Wal-Mart have argued that Plaintiffs claims pursuant to Section 292 are subject to the heightened pleading requirement of Rule 9. *See* Amazon.com Motion to Dismiss (Docket No. 53), p. 13; Mag Motion to Dismiss (Docket No. 55), p. 7; Wal-Mart Motion to Dismiss (Docket No. 48), p.12. Plaintiff disagrees. Federal Rule of Civil Procedure 9 requires a heightened pleading standard for certain matters. Rule 9(b), captioned "Fraud or Mistake; Condition of Mind" provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). However, this action is for false patent marking, not fraud.

As discussed above, the two elements of a § 292 false marking claim are "(1) marking an unpatented article and (2) intent to deceive the public." *Forest Group*, 590 F.3d at 1300. In contrast, a plaintiff asserting fraud must prove: (1) a material false misrepresentation, (2) the representation was either known to be false when made or was asserted without knowledge of its truth, (3) the representation was intended to be acted upon, (4) the representation was relied upon, and (5) injury resulted. *See, e.g., Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 394 (5th Cir. 2010). The additional elements of a fraud claim relate to the misrepresentation—that it was material and false, that it was intended to be acted upon, and that it was relied upon. This distinction is important in light of the "particularity," which courts require under Rule 9(b).

To sufficiently plead a fraud claim the plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Sullivan v. Leor Energy, LLC,* 600 F.3d 542, 551 (5th Cir. 2010) (internal quotations omitted); *see also, Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 339 (5th Cir.2008). ("Put simply, Rule 9(b) requires the complaint to set forth the who, what, when, where, and how of the events at issue") (internal quotations omitted).   These special pleading requirements, like the difference between the elements of a fraud claim and a claim under Section 292, all relate to the circumstances of the misrepresentation itself.   In contrast, there is no need to require heightened pleading to state a claim under Section 292, because the specifics of the misrepresentation are given in the statute itself.  *See* 35 U.S.C. § 292 (prohibiting marking upon, or affixing to, or using in advertising the word "patent" on an unpatented article).  Further, the acts comprising the misrepresentation are necessarily made in public, so details regarding time and place are unnecessary.   While a claim for fraud and a claim under Section 292 share the element of intent, Rule 9(b) specifically provides that intent may be alleged generally.  *See* Fed. R. Civ. P. 9(b).

In support of their argument, Defendants point to the decision of the Northern California District Court in *Juniper Networks v. Shipley* ,2009 WL 1381873 (N.D. Cal. May 14, 2009), where that court held that Rule 9(b) applies to Section 292 claims.  However, that case is at odds with the implication by this Court in *Astec America, Inc. v. Power-One, Inc.*, that Rule 9(b) does not apply to such claims.  *See Astec America, Inc. v. Power-One, Inc*., 2008 WL 1734833, *12 (E.D.Tex.) (John D. Love, Magistrate Judge) ("Power-One provides no case authority for its proposition linking a false marking claim to an averment of fraud. On the other hand, courts have generally interpreted the scope of Rule 9(b) as limited to allegations of fraud and mistake.")

(citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)).

For the reasons set forth above, this Court should follow the logic of the *Astec America* and hold

that Plaintiff's claims are not subject to the heightened pleading standard of Rule 9(b).

> **E.    Plaintiff has pleaded sufficient detail to satisfy the heightened requirements of Rule 9.**

Even if the heightened pleading standard of Rule 9(b) is applicable to Section 292 claims,

Plaintiff's allegations are sufficient.  While the Federal Circuit has never held that Rule 9(b)

applies to claims under Section 292 and has, therefore, not opined on what would be required,

some guidance may be found in *Exergen Corp. v. Wal-Mart Stores, Inc.*, in which the court

applied Rule 9(b) to allegations of inequitable conduct.  575 F.3d 1312, 1328 (Fed. Cir. 2009).

In *Exergen*, the court held that to satisfy the "particularity" requirement of Rule 9, a pleading

"must identify the specific who, what, when, where, and how of the material misrepresentation

or omission committed before the PTO."  *Id*.   The Federal Circuit held that "although

'knowledge' and 'intent' may be averred generally, a pleading of inequitable conduct under Rule

9(b) must include sufficient allegations of underlying facts from which a court may reasonably

infer that a specific individual (1) knew of the withheld material information or of the falsity of

the material misrepresentation, and (2) withheld or misrepresented this information with a

specific intent to deceive the PTO."  *Id*. at 1328-29.  The court further clarified that "[a]

reasonable inference is one that is plausible and that flows logically from the facts alleged,

including any objective indications of candor and good faith."  *Id*. at 1329, fn. 5.  The

requirements for pleading facts supporting a reasonable inference do not add anything to the

requirements of *Twombly* and *Iqbal*, discussed above.  Therefore, the additional pleading

requirements to satisfy Rule 9(b) are the "who, what, when, where and how" of the

misrepresentation.  *Id*. at 1328; *see also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d at 339 ("Put

simply, Rule 9(b) requires the complaint to set forth the who, what, when, where, and how of the events at issue.") (internal quotations omitted).

Plaintiff has adequately pled the "who, what, when, where and how" of the Defendant's wrongful conduct. The "who" are the Defendants and the public. *See, e.g.,* ¶ 34. The "what" are statements that products are patented, when they are not. *See, e.g.*, ¶¶ 34, 35. The "when," though not explicitly alleged, is implicitly alleged as ongoing as of the date of the Second Amended Complaint (further, the false patent advertising was ongoing as least as of the date shown in Exhibits 3 and 4). Finally, the where and how are by posting advertisements on walmart.com and amazon.com. See, *e.g.,* ¶ 33. Therefore, even if the heightened pleading requirement of Rule 9(b) is applied, Plaintiff's Second Amended Complaint has satisfied it.

## V.     Conclusion

Plaintiff has more than adequately pleaded causes of action against Mag under Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure by alleging specific facts supporting at least a reasonable inference that Mag has advertised unpatented products as patented for the purpose of deceiving the public in violation of Section 292. Therefore, Mag's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant Rule 12(b)(6) should be denied.

Date:  June 11, 2010                                   Respectfully submitted,


                                                       /s/George Tompkins/
                                                       George M. Tompkins, TXBN 24029864
                                                       Tompkins P.C.
                                                       825 Market Street, Building M, Suite 250
                                                       Allen, Texas  75013
                                                       214-996-4647 (tel)
                                                       469-375-3969 (fax)
                                                       George@tompkinsiplaw.com
                                                       **ATTORNEY FOR PLAINTIFF**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that all counsel of record, who are deemed to have consented to electronic service, are being served this 11th day of June 2010 with a copy of this Document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

<u>       /s/George Tompkins/       </u>