IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SARAH TOMPKINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 6:10-cv-00058 |
| VS. | § | |
| | § | |
| ABLE PLANET INCORPORATED; | § | |
| AMAZON.COM, INC.; | § | |
| AMERICAN RECREATION PRODUCTS, INC.; | § | |
| CENTURY LLC; | § | |
| CENTURY MARTIAL ART SUPPLY, LLC; | § | Jury Trial Demanded |
| MAG INSTRUMENT, INC.; | § | |
| TARGET CORPORATION; | § | |
| THINK OPERATIONS, LLC; | § | |
| WAL-MART STORES, INC.; | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT WAL-MART'S MOTION
TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Sarah Tompkins ("Plaintiff" or "Tompkins"), by and through her undersigned attorney, responds briefly by sur-reply to Defendant Wal-Mart Stores, Inc.'s ("Wal-Mart") Reply in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint (Docket No. 89), as follows:

**I.      Plaintiff has pleaded facts giving rise to a presumption of intent to deceive.**

In its recent decision in *Pequignot v. Solo Cup Co.* the Federal Circuit reaffirmed the presumption, recognized in *Clontech*, that "the combination of a false statement and knowledge that the statement was false creates a rebuttable presumption of intent to deceive the public..." -- F.3d --, 2010 WL 2346649, *6 (Fed. Cir. June 10, 2010); *see also Clontech Labs., Inc. v.*

1

*Invitrogen Corp.*, 406 F.3d 1347, 1352 (Fed. Cir. 2005).  Plaintiff has validly raised a presumption that Wal-Mart acted with the requisite intent to deceive.  Plaintiff has alleged that Wal-Mart: advertises thousands of articles as being patented;  *See* SAC, ¶ 12; takes no action to ensure that the articles it advertises as patented are actually patented; *See* SAC, ¶ 13; knows that some of the articles it advertises as patented are not patented; *See, e.g.,* SAC, ¶ 19; and intends for customers to believe that the advertised products are patented; *See, e.g.,* SAC, ¶ 17.

Wal-Mart's knowledge that many of the products advertised as patented are not, in fact, patented, comes from:   (1) statistics—Wal-Mart knows that when thousands of different suppliers of all levels of sophistication, and hailing from jurisdictions all over the globe, claim that many thousands of products are patented, the chance of every one of those claims being correct is zero, SAC, ¶ 19; (2) knowledge of specific products—in the case of Mag's Mini Maglite, the fact that the Mini-Maglite has, for many years, included the "candle mode" feature advertised as patented, is well known, and should have induced Wal-Mart to look into its patent status, SAC, ¶ 36; and (3) knowledge provided by this lawsuit—Wal-Mart has been on notice since about February 23, 2010 (the filing date of Plaintiff's Original Complaint (Docket No. 1)) that some products on its website are unpatented, and since about March 26, 2010 (the filing date of Plaintiff's First Amended Complaint (Docket No. 10)), that all of the products at issue in this action are unpatented.  Nonetheless, Wal-Mart continues to advertise the unpatented products as patented.[1]

Plaintiff's assertion is that Wal-Mart is acting with an intent to deceive the public <u>every time</u> it advertises a product as patented while consciously refusing to determine whether the products is, in fact, patented.  However, Wal-Mart's conduct is only <u>actionable</u> under Section

---

[1] If the court deems this fact important, Plaintiff would request leave to amend to allege that Wal-Mart continues to falsely advertise products as patented even after being put on notice of the falsity by this action.

292 where the products are not patented.  Plaintiff has validly alleged facts supporting that Wal-Mart advertises products as patented with knowledge that many of them are not and that the products named in this action are not patented.  These pleaded facts, when backed by evidence at the appropriate time, create a rebuttable presumption that Wal-Mart acted with intent to deceive the public.  *Pequignot*, 2010 WL 2346649, *6.  Wal-Mart and Plaintiff will both have the opportunity, after discovery, to present evidence to support or rebut the presumption.  However, dismissal at this time is unmerited.

II.     **Wal-Mart can rebut the presumption only with evidence, not solely based on argument made in a motion to dismiss.**

In the *Pequignot* opinion, the Federal Circuit did not discuss whether plaintiff Pequignot had adequately raised the presumption of intent to deceive; the court assumed he had. *Pequignot*, 2010 WL 2346649, *6-7. Rather, the court's opinion was focused on whether Solo Cup had rebutted the presumption.  *Id.* at *7 ("Here, we agree with the district court that Solo has provided sufficient <u>evidence</u> that its purpose was not to deceive the public, and that Pequignot has provided no credible contrary evidence.") (emphasis added).  The Federal Circuit held that the knowledge plus falsity presumption was rebuttable, but that Solo, to rebut the presumption, had the "burden of proof [] to show by a preponderance of the <u>evidence</u> that it did not have the requisite purpose to deceive."  *Id.*  (emphasis added).

On summary judgment, after discovery had been conducted, the lower court held that Solo had successfully rebutted the presumption.  *Id.* at *2-3.   The Federal Circuit agreed.  It found that Solo had rebutted the presumption with evidence including the following:

- That Solo obtained and reasonably relied on advice of counsel,

- That Solo took steps in good faith to replace molds with non-marked molds as the molds were worn or damaged,

- That Solo's policies conform with its stated true intent.

3

*Id.* at *8.

In contrast to *Pequignot*, this case is not at the summary judgment stage. No discovery has been taken. Wal-Mart has not put forth evidence rebutting the presumption, and such evidence would be inappropriate in a motion to dismiss under Rule 12(b)(6). Wal-Mart will have its opportunity to produce any evidence which it believes rebuts the presumption. Plaintiff will have the opportunity to examine that evidence and to seek discovery from Wal-Mart of contrary evidence. Specifically, Plaintiff believes the following areas of inquiry may shed light on Wal-Mart's true purpose:

1. When and how often has Wal-Mart been advised that many of the products it advertises as patented are not patented?

2. Why did Wal-Mart decide to advertise products as patented without verifying whether the products were covered by a patent?

3. What other advertisement screening does Wal-Mart do, and why not screen for patent status?

4. Why has Wal-Mart not removed offending ads after this lawsuit was filed?

5. What did Wal-Mart's counsel advise about making claims that products are patented without verification?

6. Does Wal-Mart have internal documents which suggest that products advertised as patented are perceived by consumers as more valuable?

At this stage, Wal-Mart is attempting to rebut the presumption by "the mere assertion by a party that it did not intend to deceive." *Id.* at *6 (quoting *Clontech*, 406 F.3d at 1352). The Federal Circuit specifically held that this is insufficient. *Id.* Indeed, it would be unfair to Plaintiff, and to any party attempting to prove a cause of action requiring intent, to allow the defendant to rebut a presumption without evidence and before discovery is taken, since a plaintiff will rarely be able to plead facts other than falsity, knowledge, and motive, as other evidence will be in the hands of the defendant. *See Poller v. Columbia Broadcasting System,*

4

*Inc.*, 368 U.S. 464, 473 (1962) (Summary procedures should be used sparingly "…where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot."). Rather, once discovery has started, Plaintiff will have the initial burden to raise the presumption using evidence, rather than pleaded facts. Once Plaintiff has met that burden, Wal-Mart's "burden of proof is to show by a preponderance of the <u>evidence</u> that it did not have the requisite purpose to deceive." *Id.* at *7 (emphasis added). Wal-Mart cannot meet that burden in a motion to dismiss.

**III.     Wal-Mart cannot rely on an "analysis" by its manufactures, when Wal-Mart has not even checked whether an analysis was conducted.**

Wal-Mart bemoans the burden that it asserts Plaintiff is attempting to impose, arguing that it would have to "(i) perform patent searches for each product; (ii) procure copies of applicable patents and corresponding prosecution histories; (iii) perform a claim construction analysis of all patents and pending patent applications; (iv) perform an analysis of the construction, processes, methods, electronics, and mechanics, of every product that bears a patent number or patent pending notice; and (v) compare each of the claims and constructions of all pertinent identified patents to each of the products, applicable components thereof, and/or the methods and/or processes to manufacture such products" for each of its "on the order of one-hundred thousand vendor products." Reply, p. 3. Wal-Mart concludes that Congress "plainly" never intended to burden a retailer in this way. *Id.* Instead, Wal-Mart argues that it is justified in relying "upon the representations and analysis of the vendors who are in the position to best understand the structure, nature, and characteristics of their respective products and whether such products are covered under any claims of any of their patents or pending patent applications." However, Plaintiff has alleged, and Wal-Mart has not disputed, that Wal-Mart did not "make any independent attempt to determine whether products advertised on their websites as patented are, in fact, patented" and

5

that Wal-Mart refuses "to confirm the patent status of products advertised as patented." SAC ¶¶ 13, 19. The efforts that Wal-Mart could have taken, had it not consciously chosen otherwise, include asking the supplier for an opinion regarding the patent status of a product or simply verifying that the supplier performed an analysis regarding patent status. Since Wal-Mart does not even know whether its supplier has performed any analysis, Wal-Mart cannot rely on that analysis.

## IV. Retailers are not immune from liability under Section 292.

Wal-Mart's suggestions that retailers should be immune from liability under Section 292 runs against the literal text of the statute and the public policies behind the statute. Section 292 provides liability for "[w]hoever <u>marks upon</u>, or <u>affixes to</u>, or <u>uses in advertising</u> in connection with..." 35 U.S.C. § 292. While retailers typically do not "mark"[2] products within the meaning of Section 292, there is nothing in the statute relieving a retailer from liability for "advertising" a product, if the other elements are proven. Further, at least one of the Congressional purposes behind Section 292 is to allow the "public to rely on marking as 'a ready means of discerning the status of intellectual property embodied in an article of manufacture or design.'" *Clontech Labs. Inc. v. Invitrogen Corp.*, 406 F.3d 1347, 1356 (Fed.Cir.2005) (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)). That purpose is frustrated by false marking because "the act of false marking misleads the public into believing that a patentee controls the article in question (as well as like articles), externalizes the risk of error in the determination, placing it on the public rather than the manufacturer <u>or seller</u> of the article, and increases the cost to the public of ascertaining whether a patentee in fact controls the intellectual property embodied in an article." *Id.* at 1356-57 (emphasis added). The purpose is equally

---

[2] *But see Brose v. Sears, Roebuck and Co.*, 455 F.2d 763, 766, fn. 3 (5th Cir.1972) (suggesting retailer Sears "marked" a product that it procured from a manufacturer but sold under its own label).

frustrated whether the deceitful party is the manufacturer or a retailer. Thus, a retailer should be held liable for its advertisement intended to deceive the public regarding the patent status of a product, even if it does not manufacture or package the product.

As part of its argument against retailer liability, Wal-Mart relies on the unpublished district court opinion in *Inventorprise v. Target*, 2009 WL 3644076, (ND NY Nov. 2, 2009). However, the *Inventorprise* opinion ultimately stands for the rather unremarkable proposition that a statement, printed on the back of a product package that Target placed on its shelves, is not advertising by Target. *Id*. at *5. In contrast, as discussed in Plaintiff's Response brief, the web pages at issue in this action are works created and displayed by Wal-Mart which tout advantages of the products (including that they are "patented") with the clear goal of inciting consumers to buy the product. Those web pages are advertisements by Wal-Mart.

Plaintiff is not suggesting that Wal-Mart must engage in the five-step process Wal-Mart describes. *See* Reply, p. 3. However, Wal-Mart's suggested interpretation of Section 292 would allow it to "rely" on information from suppliers regarding the patent status of products, regardless of evidence for or against the reliability of that information, and to pass that information on to consumers as if Wal-Mart knows it to be true. In fact, Wal-Mart's position is that it does not need to perform its own inquiry regarding whether products it advertises are patented <u>even after it has been put on notice that they are not</u>. *See* Reply, p. 5 (relying on denials by its codefendants in this action of Plaintiff's claims against them). This position is unacceptable. Unless the Court allows this case to move forward, Wal-Mart, and others like it, will be completely free to continue deceiving customers regarding the patent status of products they sell.

**V.     If the Court finds that Plaintiff has failed to comply with Rule 9, Plaintiff requests leave to re-plead.**

As discussed in her response briefs, Plaintiff does not believe that the heightened pleading standard of Rule 9 applies to her claims under Section 292.  Further, even if Rule 9 applies, Plaintiff believes she has satisfied the Rule's requirements.  However, in the event the Court finds that Rule 9 is applicable and that Plaintiff has met the pleading requirements of Rule 8 in light of *Twombly*, but has not pleaded something necessary under Rule 9, Plaintiff respectfully requests leave of court to amend her complaint to correct that deficiency.

Date:  July 5, 2010                                    Respectfully submitted,

                                    /s/George Tompkins/
                                    George M. Tompkins, TXBN 24029864
                                    Tompkins P.C.
                                    825 Market Street, Building M, Suite 250
                                    Allen, Texas  75013
                                    214-996-4746 (tel)
                                    469-375-3969 (fax)
                                    George@tompkinsiplaw.com
                                    **ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record, who are deemed to have consented to electronic service, are being served this 5th day of July 2010 with a copy of this Document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

                                    /s/George Tompkins/